UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

       Plaintiff,

         v.                         Case No.  05-11576-DPW

PARTNERS HEALTHCARE
SYSTEM, INC.,

       Defendant.
_____/

UNITED STATES' MOTION FOR SUMMARY JUDGMENT

Comes now the United States of America, by its attorney, Michael J. Sullivan, the United

States Attorney for the District of Massachusetts, pursuant to Rule 56 of the Federal Rules of

Civil Procedure, and hereby moves for the entry of summary judgment against the defendant and

in favor of the United States.  The grounds for this motion are set forth in a brief being filed

concurrently herewith.  Pursuant to Local Rule 56.1, a Statement of Material Facts to which the

United States contends there is no issue to be tried is attached to this motion.

MICHAEL J. SULLIVAN
United States Attorney


BARBARA HEALY SMITH
Assistant United States Attorney

 /s/ stephen t. lyons
STEPHEN T. LYONS
Senior Trial Attorney
Tax Division, CTS Northern Region
Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, D.C.  20044
(202) 307-6546
e-mail: stephen.t.lyons@usdoj.gov

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing UNITED STATES' MOTION

FOR SUMMARY JUDGMENT has this 19th  day of January, 2006, been electronically filed with

the Clerk of the District Court using its CM/ECF system.


    /s/ stephen t. lyons
STEPHEN T. LYONS
Senior Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 307-6546

STATEMENT OF MATERIAL FACTS WHICH THE UNITED STATES
CONTENDS THERE IS NO GENUINE ISSUE TO BE TRIED[1]

The defendant was formed in 1994 by two founding members, Massachusetts General

Hospital (MGH) and Brigham and Women's Hospital (BWH) (sometimes referred to as "the

hospitals").  Both MGH and BWH each have several affiliated hospitals as well.  Pl. ex. 1.  Both

hospital organizations are world-renowned for their patient care, research and medical education.

The defendant was formed as a support organization in order to provide efficiencies in

administering two large hospital networks.  According to a document submitted to the IRS, the

defendant stated that its primary function was to "coordinate and to provide strategic planning

opportunities for" MGH and BWH.  Pl. ex. 2, attachment p.4.  This document also provides a

detailed history of how the defendant was formed.  In its 2002 income tax return, excerpts of

which are attached as Pl. ex. 3, the defendant stated that its primary exempt purpose was "to

support affiliated exempt organizations."  According to this tax return (Pl. ex. 2, p. 6), almost all

of the defendant's income is generated by the administrative fees that it charges MGH and BWH

for administrative services it provides to those two hospital organizations, although it did receive

significant amounts of contributions from  direct and indirect public support.

During the period in issue, all four quarters for each of the years 2001-2003, the hospitals

sponsored many medical residency programs for medical school graduates.  The  mission of the

hospitals is patient care, research and medical education through patient care services.  Pl. ex. 4.

As of October 2003, the hospitals had many residents and fellows in approximately 100

---

[1]Some of the facts set forth herein were obtained from the defendant's web site, http://www.partners.org, and related links.  Other facts have been provided through the defendant's answers to written discovery.  All of the exhibits referred to herein are attached to our supporting brief which is being filed concurrently herewith.

2

residency and fellowship programs which offer both medical specialties and subspecialties.[2]  Pl.

ex. 5.  Those residency programs included dentistry, dermatology, emergency medicine,

neurology and internal medicine.  Some of these programs had subspecialties.  Residency

programs normally last at least three years, but may last for up to seven years if the resident

decides to pursue a subspecialty after completion of one of the specialty residencies.

  After accepting an appointment at the defendant, the resident signs a contract with the

sponsoring hospital which sets forth the duties and responsibilities of each party to the

agreement.  See Pl. ex. 7 which is a prototype contract for residents in an accredited residency

program with some attachments that are referred to in the contract.[3]  In that agreement, by

reference to the by-laws of the sponsoring hospital, the hospital reserves the right to terminate the

resident at any time for cause.  Also the contract between the resident or intern and the hospital to

which he or she is assigned provides that the hospital agrees to pay such resident a salary

depending on the resident's or intern's postgraduate year (PGY).[4]  See Pl. ex. 7, p.2.  For

---

[2]Medical residents are sometimes referred to as House Staff or House Officers.  Residents who have completed a basic residency program and are receiving training in a subspecialty are sometimes referred to as fellows.  See Pl. ex. 6, Defendant's Supplemental Responses to United States' Requests for Admission, response to request numbered 4.

[3]Residents appointed to non-accredited residency programs also sign a contract that has some similarities to the one for residents in accredited programs.

[4]There is no dispute that the residents are employees of an organization who receive a salary from that organization based on their PGY.  Each resident received a Form W-2, Wage Statement showing his or her stipend as wages.  Pl. ex. 6, response to request numbered 20.  Which organization employs the residents may be a disputed issue of fact that will only have to be resolved if the United States' motion is denied.  The only issues that must be decided in this motion are whether the salary payments to the residents are qualified scholarships and whether the student exception in IRC §3121(b)(10) can apply to medical residents and interns.  If the payments are not qualified scholarships and the student exception does not apply, as the court in Mount Sinai held, then the residents' salary is subject to tax under the social security system as a matter of law.  United States v. Mount Sinai, 353 F. Supp. 2d 1217 (SD Fla. 2005).

3

example, for the year 2005-2006 (the resident's employment year runs from July 1 to June 30), a

PGY-1 (first year resident or intern) was paid $47,000 and a PGY-7 (a seventh year resident) was

paid $61,507.  See Pl. ex. 8, schedule of resident's salaries for PGY 1-7 for the employment

years 2000-2001 through 2005-2006.  As part of a resident's compensation package, the hospitals

provide the resident access to a number of employee benefits.  For example, a resident has access

to the tax sheltered annuity program offered by the hospital to its employees.   Pl. ex. 7, Benefits

page and Pl. ex. 6, response to request no. 14.  Also provided free of charge to each resident is a

professional liability (medical malpractice) insurance policy.  Pl. ex. 6, response to requests nos.

14, 18.  Other benefits include access to pre-tax medical and dependent care spending accounts,

long-term disability insurance, at least two weeks paid vacation annually, paid sick leave, health

and dental insurance, life insurance and free access to an employee assistance program.[5]

After having reported the wages paid to its residents for many years on its Form 941,

Employer's Quarterly Federal Tax Return, defendant changed its longtime position and filed two

claims for refund for the period in issue, alleging that those wages should not have been included

on its Employment Tax Returns.  Pl. ex. 6, response to request no. 19.  Those two claims were

made on employment tax returns that were filed for the third quarter of 2003 and the first quarter

of 2004.  Those claims were eventually allowed and the refunds paid on March 22, 2004

---

[5]A detailed description of a typical hospital's residency programs is found in the Regional Director's
Decision and Order attached as an appendix to the decision in Boston Medical Center Corp., 330 NLRB 152, 1999
WL 1076118 (NLRB) (1999).

4

($7,333,274.00) and September 6, 2004 ($16,887,034.49).[6] These refunds were made by

crediting the amounts claimed against other FICA liabilities of the defendant. This suit for

erroneous refund for those amounts was then filed on July 27, 2005, which is within the two-year

period allowed by IRC §6532(b) for filing such actions.

The defendant makes two contentions as to why the refunds were not erroneous. It first

contends that the salary payments to the residents were exempt from income tax pursuant to IRC

§117 as qualified scholarships and thus eligible for the FICA exception in IRC §3121(a)(20). It

also contends that even if the payments are not qualified scholarships, each resident in question

was a "student" who was employed, enrolled and regularly attending classes at a school, college

or university and therefore was exempt from FICA coverage under the exception found in IRC

§3121(b)(10).[7] It is the position of the United States that the salary payments were not qualified

---

[6]In the complaint, it was alleged, based on representations from the IRS, that the erroneous refunds were made on December 15, 2003 and June 28, 2004, respectively. These two dates were the dates that the tax returns for the third quarter of 2003 and the first quarter of 2004 were posted on the IRS computers. It was on these two returns that the defendant claimed the credits. Upon further reflection, the IRS now believes that, because the credits shown on the returns for the third quarter of 2003 and the first quarter of 2004 were carried forward to the next quarter and then applied to liabilities shown on those two returns, the posting date for the returns for the fourth quarter of 2003 and the second quarter of 2004, are the correct dates the refunds were erroneously made (credited). Those dates are March 22, 2004 and September 6, 2004, respectively. The change in these dates can only benefit the defendant since, if the United States' motion is granted, these new dates would mean that the defendant would owe less interest than if the dates of erroneous refund alleged in the complaint were correct. Since the complaint was timely filed under the earlier dates alleged in the complaint, the change in dates does not affect the timeliness of the filing of our complaint. IRC §6532(b)

[7]If, for the reasons set forth in the accompanying brief, the medical residents do not receive qualified scholarships and the student exception, IRC §3121(b)(10), does not apply to them, there will be no factual issues to resolve. If there is a possibility that the residents could qualify for the student exception, many complex factual issues will require resolution, such as the nature of the relationship among the defendant and its affiliated organizations, the nature of the various residency specialties and subspecialties offered at the hospitals, what organization was the common law employer of the medical residents, whether any one or more of the organizations (the hospitals and the defendant) was a school, college or university for purposes of the statute, and the nature of the duties of the residents in each of the 100 or so medical specialities and subspecialties. These are just a few of the factual issues that would have to be resolved if our motion is denied.

5

scholarships because, inter alia, as admitted by the defendant, they were paid only on the

condition the residents perform patient care services.  Pl. ex. 6, response to request no. 11.  It is

also the position of the United States, based on the statutory and legislative history of the social

security tax statutes enacted from the beginning of the social security system in 1935 until today,

and supported by the Mount Sinai decision, that the student exception, as in effect during the

years in issue, does not apply to medical residents.