

**U.S. Department of Justice**

**Tax Division**

*Facsimile No. (202) 514-5238*
*Trial Attorney: Stephen T. Lyons*
*Attorney's Direct Line: (202) 307-6546*

*Please reply to:  Civil Trial Section, Northern Region*
*P.O. Box 55*
*Ben Franklin Station*
*Washington, D.C.  20044*

STLyons
5-36-10225
CMN 2005104714

August 10, 2006

## **FEDERAL EXPRESS**

Honorable Douglas P. Woodlock
United States District Court
District of Massachusetts
U.S. Courthouse
1 Courthouse Way Suite 2300
Boston, MA 02210

> Re:     United States v. Partners Healthcare System, Inc.
>           Civ. No. 05-11576-DPW      (USDC D. Mass.)

Dear Judge Woodlock:

By letter dated July 14, 2006, counsel for the defendant notified the Court of an impending decision in United States v. University Hospital. On July 26, 2006, the court rendered that opinion which was forwarded to you under cover of letter dated July 28, 2006. On August 9, the United States filed a motion for reconsideration of that decision and a memorandum in support of that motion setting forth our reasons why we believe that decision to be in error. A copy of our memorandum in support of that motion is enclosed. If any response is filed to our motion for reconsideration, we will immediately provide the court with a copy of that response.

Sincerely,

Stephen T. Lyons
Senior Trial Attorney
Tax Division, Department of Justice

Enclosure

cc: Christopher Kliefoth

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff/Counter-Defendant,

    v.

UNIVERSITY HOSPITAL, INC.,

    Defendant/Counter-Plaintiff.

Case No. 1:05CV445

Hon. Sandra S. Beckwith
Magistrate Judge Black

## MEMORANDUM IN SUPPORT OF UNITED STATES'
## MOTION FOR RECONSIDERATION

The United States submits this memorandum in support of its motion for reconsideration

of the Court's Order entered on July 26, 2006, which denied the United States' motion for

summary judgment in the above-captioned proceeding.

### ISSUES PRESENTED

1.    Whether the Court should reconsider its conclusion that the language of IRC

§ 3121(b)(10), creating a general exception to FICA coverage for students, did not, as a matter of

law, preclude UHI's medical residents from qualifying for the general student exception to FICA

coverage because:

    a.    of an incorrect reading of IRC §3121(b)(7) as excluding payments for services

        performed by medical residents employed by facilities owned by the District of

        Columbia from coverage under FICA;

    b.    the legislative history cited by the Court to confirm its erroneous conclusion that

        medical interns and residents employed by the District of Columbia were

        excluded from FICA coverage, contains a printing error that likely led to the

erroneous conclusion that the legislative history in fact supported the Court's

erroneous conclusion. *See* S.R. No. 89-404 (1965), *reprinted in*, 1965

U.S.C.C.A.N. 1943, at 2183;

c.   the Court misplaced reliance upon the express statutory exclusion in IRC

§ 3121(b)(6)(B). That section provides that the services performed by medical

and dental interns and residents employed by federally-owned hospitals are

included under FICA; and

d.   in holding that the 1965 amendments to the Social Security Act repealing the

intern exception did not foreclose medical residents from invoking the student

exception in IRC § 3121(b)(10), the Court erroneously relied upon a single phrase

of a sentence from the legislative history of the 1965 amendments that explains

that medical interns will be subject to FICA taxes "unless their services are

excluded under provisions other than section 3121(b)(13)." (Citing H.R. Rep. 89-

213, at 216, *reprinted in,* 1965 C.B. at 747).

2.      Whether the Court should reconsider its conclusion that pursuant to IRC § 117, its

regulations and rulings, an amount received shall not be treated as a scholarship if such amount

represents payment for services that are required as a condition to receiving such amount, so long

as the amount is not substantial.

## SUMMARY

The United States commenced this proceeding to recover certain FICA taxes and interest

paid and withheld by UHI from the wages it paid to its medical residents that were erroneously

refunded to UHI for all of the quarterly tax periods in the years 1999 and 2000. UHI filed a

counterclaim seeking a refund of FICA taxes and interest paid for all of the quarterly tax periods

for each of the years 1997, 2001, 2002, 2003, and the period from January 1, 2004 to February 24, 2004. The total amount at issue in this proceeding is in excess of $15 million.

On March 29, 2006, the United States moved for summary judgment on the grounds that, as a matter of law, the salary stipends paid to UHI's medical residents are subject to FICA. On July 26, 2006, the Court entered an order denying the United States' motion for summary judgment, concluding that the issues of whether the medical residents employment was covered by FICA under IRC § 3121 or qualified for exclusion from income under IRC § 117 (and thereby qualified for exclusion from FICA) depends on the facts and circumstances under which the salary stipends were paid and received.

Although the Federal Rules of Civil Procedure do not provide for motions for reconsideration, such motions, if served within ten days of the entry of judgment, are considered motions to alter or amend judgments pursuant to Rule 59(e). Fed. R. Civ. P. 59(e); *see also Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982). Motions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *See GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted); *Braxton v. Scott*, 905 F. Supp. 455, 457 (N.D. Ohio 1995) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)) (A motion to amend or alter should be granted if "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.").

The United States asks the Court to reconsider its July 26, 2006 Order, because, as discussed more fully below, the Court made clear errors of law in reaching its conclusions. In interpreting IRC § 3121, the Court made four errors of law:

1859312.1

a.      First, the Court adopted an incorrect reading of IRC §3121(b)(7) as excluding
        payments for services performed by medical residents employed by facilities
        owned by the District of Columbia from coverage under FICA;

b.      Second, the legislative history cited by the Court to confirm its erroneous
        conclusion that medical interns and residents employed by the District of
        Columbia were excluded from FICA coverage, contains a printing error that likely
        led to the erroneous conclusion that the legislative history of IRC § 3121(b)(7) in
        fact supported the Court's erroneous conclusion. *See* S.R. No. 89-404 (1965),
        *reprinted in*, 1965 U.S.C.C.A.N. 1943, at 2183;

c.      Third, the Court misplaced reliance upon the express statutory exclusion in IRC
        § 3121(b)(6)(B). That section provides that the services performed by medical
        and dental interns and residents employed by federally-owned hospitals are
        included under FICA; and

d.      Fourth, in holding that the 1965 amendments to the Social Security Act repealing
        the intern exception did not foreclose medical residents from invoking the student
        exception in IRC § 3121(b)(10), the Court erroneously relied upon a single phrase
        of a sentence from the legislative history of the 1965 amendments that explains
        that medical interns will be subject to FICA taxes "unless their services are
        excluded under provisions other than section 3121(b)(13)." (Citing H.R. Rep. 89-
        213, at 216, *reprinted in,* 1965 C.B. at 747).

The Court also erred in finding that, in order for the payments to be noncompensatory

scholarships, the *quid pro quo* had to be substantial. No such "substantiality" requirement exists

in either IRC § 117, or the Treasury Regulations or rulings thereunder.

## ARGUMENT

**I.      The Court erred in holding that the student exception of IRC § 3121(b)(10) might,
         depending on the facts and circumstances, apply to UHI's medical residents.**

The Court denied the United States' motion for summary judgment on the ground that the

plain language of the student exception set forth in IRC § 3121(b)(10) did not expressly preclude

UHI's medical residents from invoking the student exception to FICA. The Court reached this

conclusion after comparing different subsections of IRC § 3121(b). The Court read IRC

§ 3121(b)(7) as expressly containing an exclusion for medical residents, one not also found in

IRC § 3121(b)(10). The Court found Congress excepted from FICA services performed by medical residents employed by the federal government in IRC § 3121(b)(6), but did not except from FICA the services performed by medical residents employed by the District of Columbia in IRC § 3121(b)(7). Based on its reading of IRC §§ 3121(b)(6) and (b)(7), that Congress had both included and excluded from FICA coverage the performance of services by medical residents, the Court reasoned that Congress would have included an exception for medical residents in IRC § 3121(b)(10) if it intended that medical residents were to be covered by FICA. Consequently, the Court concluded that the language of IRC § 3121(b)(10), creating a general exception to FICA coverage for students, did not, as a matter of law, preclude UHI's medical residents from qualifying for the general student exception to FICA coverage.

The United States submits that the Court's reasoning is erroneous as a matter of law. First, the Court's reading of IRC § 3121(b) (7) as *excluding* payments for services performed by medical residents employed by facilities owned by the District of Columbia from coverage under FICA is incorrect. In general, IRC § 3121(b) defines employment covered by FICA. IRC § 3121(b)(7) excludes from FICA coverage services performed by employees of State and local governments. IRC § 3121(b)(7)(C) then excepts from the exclusion, payments to employees of the District of Columbia if such employees are not covered by some other federal retirement

1859312.1

system, thus including these employees in FICA coverage.[1] Then, like subsection (b)(6),[2] subsections (b)(7)(C)(i) and (b)(7)(C)(ii) create a further exclusion from FICA coverage for services performed by employees of District of Columbia-owned penal institutions and hospitals who are interns, student nurses and other student employees (all of whom are covered by 5 U.S.C. § 5351(2)), **"other than as a medical or dental intern or a medical or dental resident in training"** [emphasis added]. The result, again, is that medical residents of institutions owned by the District of Columbia are covered by FICA.

The Court incorrectly concluded, however, that IRC § 3121(b)(7) excluded services performed by a medical or dental resident of a hospital of the District of Columbia from FICA-covered employment. As demonstrated above, the statute includes, rather than excludes, the services performed by medical residents employed by hospitals owned by the United States and by the District of Columbia under FICA. Thus, both IRC §§ 3121(b)(6) and (b)(7) cover the performance of services by medical residents employed by the United States and the District of Columbia.

Second, the legislative history cited by the Court to confirm its erroneous conclusion that medical interns and residents employed by the District of Columbia were excluded from FICA coverage, when, as shown above, they are included in FICA coverage, contains a printing error

---

[1] The exclusion of employees of the District of Columbia covered by another retirement system was necessitated by the general inclusion of the District of Columbia in the definition of "State" in the Internal Revenue Code. *See* IRC § 7701(a) (10). The further exclusion of District of Columbia employees not otherwise covered by a retirement system was apparently an attempt to ensure these employees some retirement income through participation in FICA, if not covered by an alternative system.

[2] IRC § 3121(b)(7) is identical in all material respects to IRC § 3121(b)(6), except that § 3121(b)(6) applies to services performed by federal employees.

1859312.1

that likely led to the conclusion that the legislative history in fact supported the Court's erroneous

conclusion. *See* S.R. No. 89-404 (1965), *reprinted in*, 1965 U.S.C.C.A.N. 1943, at 2183. The

original version of the legislative history states:

> Sections 317(a) and 317(b) of the bill amend the Social Security Act (sec.
> 210(a)(7)) and the Internal Revenue Code of 1954 (sec. 3121(b)(7)) to include in
> the definition of employment services performed by certain temporary employees
> of the District of Columbia. Under the amendments, service performed in the
> employ of the District of Columbia, or any wholly owned instrumentality thereof,
> is included as employment if such service is not covered by a retirement system
> established by a law of the United States, except that the extension of coverage is
> not to apply to service performed:
>
> * * *
>
> (2) in a hospital of the District of Columbia by student *nurses and certain other student*
> *employees (other than as a medical or* dental intern or as a medical or dental resident-in-
> training) included under section 2 of the act of August 4, 1947 (5 U.S.C. 1052). . . .
> **[emphasis added to highlight the words omitted from the passage relied upon by the**
> **Court].**[3]

The exclusion of the emphasized language changes the entire meaning of the Senate

explanation. The exclusion of "other than" creates the incorrect meaning that services performed

by medical residents are within the exclusion from FICA-covered employment. The inclusion of

the erroneously omitted language "other than . . . medical residents" makes it clear that the

services performed by medical residents are not excluded from FICA coverage, but, rather, are

excluded from the exclusion, and thus are included in FICA-covered employment.

---

[3] The version of this legislative history that appears in Westlaw, which is identical to the Court's
restatement of the legislative history in its Order, omits the italicized language above, and reads
as follows:

> (2) in a hospital of the District of Columbia by student dental intern or as a medical or
> dental resident-in-training) included under section 2 of the act of August 4, 1947 (5
> U.S.C. 1052). . . .

Copies of both the original version and the Westlaw version of the Senate Report are attached
hereto as Government Exhibit A.

1859312.1

Third, the Court misplaced reliance upon the express statutory exclusion in IRC § 3121(b)(6)(B). That section provides that the services performed by medical and dental interns and residents employed by federally-owned hospitals are included under FICA. The Court reasoned that it was significant that Congress made such an express statement about medical residents at federally-owned hospitals, but made no parallel express exception for the services performed by medical residents to the general "student" exception in IRC § 3121(b)(10).

It appears, however, that the Court did not realize that there is a need for such an express exception in IRC § 3121(b)(6) because of the interplay between FICA and other federal pay and benefit laws under 5 U.S.C. § 5351(2).[4] Because services performed by federally-employed "interns, student nurses, and other student employees of hospitals" are exempt from certain federal pay and benefit laws under 5 U.S.C. § 5351(2), Congress had to include an express exemption for persons covered by 5 U.S.C. § 5351(2) to preserve the integrity of the exemption created by 5 U.S.C. § 5351(2). In other words, because "medical or dental intern[s]" and "resident[s]-in-training" are included in the definition of "student-employee" in 5 U.S.C. § 5351(2)(A),[5] an express exception to the exemption was necessary in IRC § 3121(b)(6). Congress made an express exception in the case of medical and dental interns and residents-in-training to the coverage exemption for the federally and DC-employed student nurses in IRC §§ 3121(b)(6) and (b)(7), because 5 U.S.C. § 5351(2)(A), to which those statutes refer (and

_____

[4] The effect of the interplay between IRC §§ 3121(b)(6) and (b)(7) and 5 U.S.C. § 5351(2) as it relates to the student exception issue in this case was not briefed by either party.

[5] The term "student-employee" for purposes of the federal pay and benefits laws as defined in 5 U.S.C. § 5351(2)(A), means "a student nurse, *medical or dental intern, resident-in-training*, student dietitian, student physical therapist, and student occupational therapist, assigned or attached to a hospital, clinic or medical or dental laboratory operated by an agency." [Emphasis added.]

1859312.1

which carves out exemptions from federal pay and benefits laws), lists medical and dental interns and residents-in-training in its definition of "student-employee." The need for an express exclusion resulted in the need for a further express exclusion (and thereby an inclusion in FICA coverage) of services performed by medical residents in IRC §§ 3121(b)(6) and (b)(7). This exemption, however, only applies to employees of the federal government (and the District of Columbia).

The exception in (b)(6) was necessary given the definition of "student-employee" in the federal pay and benefits laws which included medical and dental interns and residents-in-training. The same rationale is not present for the student exception. There was simply no reason why Congress would include identical language expressly excluding medical residents from the student exception in IRC § 3121(b)(10).

Fourth, in finding the *St. Luke's* case inapposite, the Court relied upon one sentence from the 1965 amendments to the Social Security Act repealing the intern exception, and found that sentence did not foreclose medical residents from invoking the student exception in IRC § 3121(b)(10). This reliance was in error. That sentence from the legislative history of the 1965 amendments explains that medical interns will be subject to FICA taxes "unless their services are excluded under provisions other than section 3121(b)(13)." (Citing H.R. Rep. 89-213, at 216, *reprinted in,* 1965 C.B. at 747). For the reasons stated in our opening brief at page 22, footnote 27, the other provisions referred to are employer-related provisions not employee-related provisions, such as the student exception. Once the nature of these other available exceptions are examined, it remains implausible that Congress could have intended the reference to other exemptions to mean that a medical resident who does not qualify for the intern exception could still be excepted from coverage as a student.

1859312.1

## II.     Neither IRC § 117(c) nor the applicable Treasury Regulations and rulings thereunder, provide that the *quid pro quo* of medical resident services must be "substantial" before the salary stipends are excepted from FICA coverage.

The Court found that a material question of fact existed as to whether the *quid pro quo* of services provided by medical residents in return for a salary stipend was substantial. Because neither IRC § 117 nor Treasury Regulations and rulings thereunder, require that the *quid pro quo* be "substantial," the United States respectfully submits that the Court's Order in this regard was clear error.

UHI contended that the salary stipends paid to its medical residents are not wages for purposes of IRC § 3121(a) because such salary stipends are in the nature of noncompensatory or training scholarships under IRC § 117, and thus such payments are not subject to social security tax. To qualify as a noncompensatory scholarship under IRC § 117, a payment must be received as a scholarship. *See* Treas. Reg. §§ 1.117-3, 4 and Notice 87-31. Although the term "scholarship" is not defined in IRC § 117, the regulations under IRC § 117 state that a scholarship generally means an amount paid for the benefit of a student to aid such student in pursuing his studies. *See* Treas. Reg. § 1.117-3(a). IRC § 117(c) provides, however, that an amount is not received as a scholarship if, as a condition to receiving such amount, the recipient is required to perform services. *See* Treas. Reg. § 1.117-4(c)(1); Prop. Treas. Reg. § 1.117-6(d)(2).

Thus, under IRC § 117, the Treasury Regulations and rulings thereunder, there is a two-part test that must be satisfied if the salary stipends are to qualify for exemption from FICA. First, the payment must be a scholarship. Second, to be considered as having been received as a scholarship, performance of services by UHI's medical residents cannot be a condition to receipt of the salary stipends.

1859312.1

In finding that a factual question existed as to the second prong of the test outlined above, *i.e.*, whether the salary stipends were received as scholarships,[6] the Court relied upon a pre-1986 Supreme Court case, *Bingler v. Johnson*, 394 U.S. 741 (1969), to conclude that, even today, the *quid pro quo* test referenced in *Bingler* requires a "substantial" *quid pro quo*. The Court's analysis, however, ignores the 1986 enactment of IRC §117(c), a codification of a portion of the Supreme Court's opinion in *Bingler*. IRC § 117(c) provides that a *quid pro quo* exists (*i.e.*, a payment is not received as a scholarship) if, as a condition to receiving the salary payments, services must be performed.[7]

Nothing in the statute or its legislative history suggests that an examination of the magnitude or substantiality of the *quid pro quo* is required. Such a requirement, if present,

---

[6] The Court's Order does not expressly adopt this two-part test, even though its analysis focused upon the issue of whether the salary stipends were received as scholarships. The additional *Bingler* factors noted by the Court, such as whether the stipends were close in amount to the taxpayers' prior salaries, whether the taxpayers continued to receive employee benefits from the employer, the topics of study related to their prior work, and whether the taxpayers were required to submit periodic work reports to the employer, pertain to the issue of whether the salary stipends were scholarships in the first instance, and are therefore immaterial to the analysis of whether the salary stipends were *received* as scholarships. To the extent the Court intended to include these additional factors in its consideration of the second prong, the statute, Treasury Regulations, rulings and the legislative history are bereft of any indication that factors other than the existence of a *quid pro quo*, should be considered in determining whether an amount *received* as a scholarship "represents teaching, research or other services by the student required as a condition for receiving the qualified scholarship or qualified tuition reduction." As the Court appears to agree with the United States that UHI's medical residents were required to perform patient care services as a condition to obtaining their salary stipends, the salary stipends were not received as scholarships and are subject to FICA. Order, p. 10 ("[t]his is not a bad argument except there is no way to tell whether the *quid pro quo* was substantial.")

[7] Similarly, the Court's reliance upon *Cooney v. United States*, 630 F.2d 438 (6th Cir. 1980); *Logan v. United States*, 518 F.2d 143 (6th Cir. 1975); *Stewart v. United States*, 363 F.2d 355 (6th Cir. 1966), as well as cases from other circuits, in declining to adopt a *per se* rule that salary stipends do not qualify for the scholarship exclusion is misplaced as all of these cases were decided prior to the 1986 enactment of IRC § 117(c).

1859312.1

would be contrary to the stated purpose of the statute, found in the language of the legislative history of IRC §117 that was quoted by the Court in its decision. That history stated that the statute was enacted to reduce the complexity and uncertainty created by the prior case law. Under the Court's analysis, however, the complexity and uncertainty would be increased, not reduced, by having to examine the facts and circumstances as to whether the *quid pro quo* was "substantial" on a case-by-case basis.[8]

Here, it is undisputed that UHI's medical residents were legally and contractually required to perform patient care services as a condition to obtaining their salary stipends. Neither the statute nor the Treasury Regulations and rulings thereunder, impose a requirement that any *quid pro quo* be substantial. Any performance of services required as a condition to receiving the salary stipend, no matter how large or small those services may be, satisfies the requirements found in IRC § 117(c). Therefore, as a matter of law, under IRC §117(c), as in effect during the years in issue, the salary stipends were not "received as scholarships" and are subject to FICA.[9]

_____

[8] As the Court noted, "a *per se* rule is not a bad idea" as "these cases almost invariably end the same way." (Order, p. 12) The issues raised by this case have nationwide significance with current implications of approximately \$2-3 billion, annually. *See also United States v. Mount Sinai Med. Ctr. of Florida, Inc.*, 353 F.Supp.2d 1217, 1229 (S.D. Fla. 2005) ("It is undisputed that since *Apfel* was decided, more than 7,000 claims have been filed with the IRS seeking refunds of over \$1.135 billion of social security taxes paid by residents and hospitals, based on an argument that medical residents are excepted from social security coverage").

[9] The Court observed (Order, p. 9) that our position on the scholarship issue, that under the undisputed material facts the issue was one of law, is contrary to a long line of IRS rulings. Whether the IRS has treated this as a factual issue is irrelevant since the IRS has always held, as reflected in the cited rulings and as we contend here, that if the payment is received on the condition services be performed, the payment is subject to FICA (and, in the three cited private letter rulings, no services were performed). Here, because it is undisputed that UHI's medical residents were legally required to perform patient care services as a condition to receiving their salary stipend, or be fired, as a matter of law, based on IRC §117(c) and Notice 87-31, the payments are wages subject to FICA (*i.e.*, not received as a scholarship). Notably, in Revenue Ruling 76-252, as cited by the Court, the IRS stated that "although residents . . . acquire training

1859312.1

## **CONCLUSION**

For the reasons set forth herein, the United States respectfully requests that the Court

reconsider its July 26, 2006 Order, grant the United States' Motion for Reconsideration, and

reverse the denial of the United States' Motion for Summary Judgment.

Respectfully submitted,

GREGORY G. LOCKHART
United States Attorney

DONETTA WIETHE DONALDSON
Assistant U.S. Attorney

*s/Elizabeth Lan Davis*
STEPHEN T. LYONS
ELIZABETH LAN DAVIS
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 55
Washington, D.C. 20044
Telephone: (202) 307-6546(Lyons)/6550(Davis)
Facsimile: (202) 514-5238
E-mail: stephen.t.lyons@usdoj.gov;
    Elizabeth.Lan@usdoj.gov

---

and experience while participating in the . . . residency program, they are primarily performing
services as resident doctors . . . ."

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing *United States' Motion for*

*Reconsideration, and Memorandum in Support of United States' Motion for Reconsideration* has

this 9th day of August, 2006, been electronically filed with the Clerk of the District Court using

its CM/ECF system.

> *s/Elizabeth Lan Davis*
> ELIZABETH LAN DAVIS
> Trial Attorney, Tax Division
> U.S. Department of Justice
> P.O. Box 55
> Washington, D.C. 20044
> Telephone: (202) 307-6550
> Facsimile: (202) 514-5238
> E-Mail: Elizabeth.Lan@usdoj.gov

## CONTENTS

ons, etc.—Continued
...nd disability insurance provisions—Con-

...st estimates for the old-age, survivors,
...ility insurance systems—Continued
... estimates on range basis _____ Page
  (1) Long-range operations of trust funds.  141
  (2) Benefit costs in future years relative  141
       to taxable payroll _____
...endments _____  143
...deral payments under public assistance  143

...limitations on Federal participation in
...to aged individuals with tuberculosis or  143
...eases _____
...es with dependent children in school____  144
...yments _____  146
...certain earnings in determining need  147
...lic assistance programs _____
...age assistance _____  148
...o families with dependent children_____  148
...to the permanently and totally disabled  1..
...DI benefit increase attributable to retro-
...ive effective date _____
...omic Opportunity Act _____
...ne exempt under another assistance pro-
...im _____
...e and judicial review of certain admin-
...terminations _____
...of State effort _____
...o definition of medical assistance for the

... _____
...       in the public assistance matching

-----------------------------------------------

...he House bill approved_____
...he House bill deleted_____
...ns_____

...der Secretary and Assistant Secretaries
...rtment of Health, Education, and Wel-
...ional supergrades _____  1..
...the bill_____

...ospital insurance tax rates, estimated
...ombined tax on employer and employee

...costs, number of persons affected, and
...mportance in H.R. 6675, Committee on

### PART II

-----------------------------------------------

Calendar No. 389

| CONGRESS | SENATE | REPT. 404 |
| Session | | Part I |

## SOCIAL SECURITY AMENDMENTS OF 1965

...30 (legislative day JUNE 29), 1965.—Ordered to be printed

...f Louisiana, from the Committee on Finance, submitted
the following

## REPORT

together with

...L, ADDITIONAL AND SUPPLEMENTAL VIEWS

[To accompany H.R. 6675]

...ee on Finance, to whom was referred the bill (H.R.
... a hospital insurance program for the aged under
... Act with a supplementary health benefits program
... program of medical assistance, to increase benefits
..., survivors, and disability insurance system, to
...al-State public assistance programs, and for other
... considered the same, report favorably thereon
...nd recommend that the bill do pass.

1

GOVERNMENT
EXHIBIT

A

hose employees who concurred in the filing
nd who concur in the filing of the amendment
purposes of computing interest and for
the Internal Revenue Code of 1954 (relating
ire to file a tax return), the due date for the
of the tax for any calendar quarter resulting
n amendment shall be the last day of the
dar quarter in which the amendment is filed,
taxes which become payable under the new
not expire before the expiration of 3 years

*numeration erroneously reported as wages by*
*ns*

he bill amends section 105(b) of the Social
f 1960, which provided that an employee of
could, under certain circumstances, receive
r remuneration erroneously reported on his
ion in any taxable period from January 1,
1960. Section 105(b) of the Social Security
s amended by the bill, will (where the condi-
amendment are met) permit the validation
l wages of workers who cannot be covered
vaiver certificate by the organization because
ie employ of the organization when it files its
on 105(b), as amended by the bill, remunera-
ual for service before the calendar quarter in
n files its waiver certificate under section
nal Revenue Code of 1954 may be deemed to
a for employment for purposes of title II of
, to the extent that an amount has been paid
with respect to such remuneration on or before
x return for the calendar quarter before
ich the organization files its waiver certifi-
ver, only if the service would have constitu
in section 210 of the Social Security Act if
n 3121(k)(1) of the code were satisfied,
nditions are met:

ho performed the service (or a fiduciary a
ate, or a survivor of such individual who
led to monthly benefits under title II of
t on his earnings record) makes a request
nner, and with such official, as the Secreta
i, and Welfare may by regulations prescr
ration be deemed to constitute remunera
r purposes of title II of the Social Security
e under section 3121(k)(1) of the Inter
1954 is filed by the organization not later
the request for validation is made;
lual requesting the validation is no lon
organization on the date the organization
ite; and
of the amount paid as social security taxes
ed with respect to such remuneration paid
credited or refunded, the amount credited

refunded, plus any interest allowed, must be repaid before
January 1, 1968, or, if later, the first day of the third year after
the year in which the organization files its waiver certificate.
ddition, the so-called validation of wages is to be permitted only
remuneration received for service which is performed during the
d for which an organization's waiver is effective. Thus, former
oyees of an organization which has made erroneous reports
re no greater retroactive social security coverage than employees
are employed by the organization on the date the organization
its waiver certificate and are covered only for the retroactive
for which the certificate is made effective.

*e dates of validating provisions*

ion 316(c)(2) of the bill provides that the provisions of section
of the Social Security Amendments of 1960, as amended by
l, will become effective upon enactment of the bill. The
ons of the existing section 105(b) of the Social Security Amend-
of 1960 will continue to apply to requests for validation filed
enactment of the bill. The filing of a request by an individual
lidation under the existing provisions of section 105(b) of the
Security Amendments of 1960 does not bar him from filing
request for validation under section 105(b) as amended by

n 316(d) of the bill permits the validation of erroneously
wages paid to employees of a nonprofit organization which
a waiver certificate but which nevertheless failed to provide
social security coverage for some of its employees. Under
16(d), remuneration paid to an individual for service which
d from employment under title II of the Social Security
which is performed during the period in which the organiza-
in effect a waiver certificate under section 3121(k)(1) of the
Revenue Code of 1954, may be deemed to constitute re-
n for employment for purposes of title II of the Social
ct if any amount has been paid as social security taxes
t to such remuneration on or before the date of enactment
if the service would have constituted employment as
section 210 of the Social Security Act if the requirements
ion 3121(k)(1) of the code had been satisfied, and if the indi-
was listed at any time during the period the organization
aiver certificate in effect under section 3121(k)(1) of the
Revenue Code as a concurring employee, or he filed a val-
equest under section 105(b) of the Social Security Amend-
1960 as in effect prior to the enactment of this act (but such
r validation request was not effective with respect to the
ing validated by this subsection).

17. COVERAGE OF TEMPORARY EMPLOYEES
OF THE DISTRICT OF COLUMBIA

17(a) and 317(b) of the bill amend the Social Security
0(a)(7)) and the Internal Revenue Code of 1954 (sec.
to include in the definition of employment services
certain temporary employees of the District of Columbia.
endments, service performed in the employ of the
umbia, or any wholly owned instrumentality thereof, is

244    SOCIAL SECURITY AMENDMENTS OF 1965

included as employment if such service is not covered by a retirement system established by a law of the United States, except that the extension of coverage is not to apply to service performed: (1) In a hospital or penal institution by a patient or inmate thereof, (2) in a hospital of the District of Columbia by student nurses and certain other student employees (other than as a medical or dental intern or as a medical or dental resident-in-training) included under section 2 of the act of August 4, 1947 (5 U.S.C. 1052), (3) on a temporary basis in certain emergencies, or (4) as a member of a board, committee, or council of the District of Columbia paid on a per diem, meeting, or other fee basis.

Section 317(c) of the bill amends section 3125 of the Internal Revenue Code of 1954 (relating to returns in the case of governmental employees in Guam and American Samoa) by changing the heading thereof and adding a new subsection (c). The new subsection (c) provides that the return and payment of the employee and employer taxes imposed under chapter 21 of the code (Federal Insurance Contributions Act) with respect to services performed as employees of the District of Columbia, or of any wholly owned instrumentality of the District of Columbia, may be made by the Commissioners of the District of Columbia or by such agents as they may designate. A person making such return may, for convenience of administration, make payments of the employer tax imposed under section 3111 without regard to the dollar limitations in section 3121(a)(1)(although this subsection would not authorize such person to disregard these dollar limitations as to remuneration includible in returns made by him). The purpose is to relieve a person making a return on behalf of any department or agency of the District of Columbia or any instrumentality wholly owned thereby, of any necessity for ascertaining whether any wages have been reported for a particular employee by any other reporting unit of such government or instrumentality.

Section 317(d) of the bill amends section 6205(a) of the Internal Revenue Code of 1954 by adding a new paragraph (4). The new paragraph (4) provides that the Commissioners of the District of Columbia and each agent designated by them, pursuant to section 3125 of the code, to make returns of the employee and employer taxes imposed under the Federal Insurance Contributions Act, will be deemed to be a separate employer for purposes of section 6205(a) of the code, relating to adjustments of underpayments of such taxes. Thus, adjustments of underpayments will be made by the reporting unit by which the underpayment was made.

Section 317(e) of the bill amends section 6413(a) of the Internal Revenue Code of 1954 by adding a new paragraph (4). The new paragraph (4) provides that the Commissioners of the District of Columbia and each agent designated by them, pursuant to section 3125 of the code, to make returns of the employee and employer taxes imposed under the Federal Insurance Contributions Act, will be deemed to be a separate employer for purposes of section 6413(a) of the code, relating to adjustments of overpayments of such taxes. Thus, adjustments of overpayments will be made by the reporting unit by which the overpayment was made.

Section 317(f) of the bill amends paragraph (2) of section 6413(c) of the Internal Revenue Code of 1954 by redesignating the heading of

85                    SOCIAL SECURITY AMENDMENTS OF 1965            245

by a retirement
except that the
ormed: (1) In a
hereof, (2) in a
ses and certain
dental intern or
under section 2
temporary basis
t, committee, or
em, meeting, or

e Internal Rev-
f governmental
ing the heading
· subsection (e)
e and employer
Insurance Cont
s employees of
trumentality of
issioners of the
/ designate.
administration
r section 311
(a)(1)(although
disregard these
turns made by
turn on behal
bia or any in
or ascertain
r employee
mentality.
f the Inter
(4).   The n
he District
ant to sect
and emplo
ns Act, will
ion 6205(a)
f such tax
the report

the Inter
t).   The n
e District
nt to sect
nd emplo
ons Act,
tion 641
f such ta
he report

tion 64
e head

such paragraph (2) and by adding to such paragraph (2) a new sub-
paragraph (F).   The new subparagraph provides that for purposes
of the special credit or refund provisions contained in section 6413(c)(1)
of the code, the Commissioners of the District of Columbia and each
t designated by them to make returns of the employee and em-
er taxes imposed under the Federal Insurance Contributions
will be deemed to be a separate employer.   The effect of this
dment is to permit a claim for special credit or refund, rather
a general claim for refund under section 6402(a), in any case
an employee receives more than the maximum creditable
in a calendar year by reason of having performed services for
e more reporting units of the District of Columbia or any in-
entality wholly owned thereby.

on 317(g) of the bill provides that the amendments made by
317 will apply with respect to service performed after the
r quarter in which such section is enacted and after the calen-
arter in which the Secretary of the Treasury receives a certi-
from the Commissioners of the District of Columbia expressing
their desire to have the insurance system established by title II (and
pt. A of title XVIII) of the Social Security Act extended to the officers
and employees coming under the provisions of such amendments.

## TION 318.  COVERAGE FOR CERTAIN ADDITIONAL HOSPITAL EMPLOYEES IN CALIFORNIA

tion 318 of the bill amends section 102(k) of the Social Security
ents of 1960 by adding a new paragraph (2) permitting the
agreement with the State of California to be modified to
ertain additional services performed for any hospital affected
modification (in the California State coverage agreement)
pursuant to section 102(k).   The services which could thus
ed are those performed by individuals who were or are em-
y such State (or any political subdivision thereof) after De-
l, 1959, in any position described in section 102(k).   The
State will have until the end of the sixth month after the month of
enactment in which to so modify its agreement.   Such modification
will be effective with respect to services performed on or after Jan-
ary 1, 1962; it will also be effective with respect to services performed
before January 1, 1962, where contributions in the proper amount
have been paid before the date of enactment of the bill.

## N 319.  TAX EXEMPTION FOR RELIGIOUS GROUPS OPPOSED TO INSURANCE

ment to the Internal Revenue Code of 1954

n 319(a) of the bill amends section 1402(c) of the code by
new paragraph (6) which excepts from the term "trade or
the performance of service by individuals who are members
religious faiths during the period for which an exemption
new subsection (h) (as added by sec. 319(c)) of section 1402
with respect to them.   The effect of the amendment is to
m the self-employment tax an individual who is granted an
under section 1402(h) of the code.

Westlaw.

S. REP. 89-404                                                        Page 1

S. REP. 89-404, S. Rep. No. 404, 89TH Cong., 1ST Sess. 1965, 1965 U.S.C.C.A.N.
1943, 1965 WL 4458 (Leg.Hist.)

(Cite as: 1965 U.S.C.C.A.N. 1943)

> \*1943 P.L. 89-97, SOCIAL SECURITY AMENDMENTS OF 1965
> House Report (Ways and Means Committee) No. 89-213,
>        Mar. 29, 1965 (To accompany H.R. 6675)
>     Senate Report (Finance Committee) No. 89-404,
>        June 30, 1965 (To accompany H.R. 6675)
>           Conference Report No. 89-682,
>        July 26, 1965 (To accompany H.R. 6675)
>              Cong. Record Vol. 111 (1965)
>        DATES OF CONSIDERATION AND PASSAGE
>              House Apr. 8, July 27, 1965
>              Senate July 9, July 28, 1965
> The Senate Report and the Conference Report are set out.

(CONSULT NOTE FOLLOWING TEXT FOR INFORMATION ABOUT OMITTED MATERIAL.  EACH
COMMITTEE REPORT IS A SEPARATE DOCUMENT ON WESTLAW.)

SENATE REPORT NO. 89-404
June 30, 1965

THE Committee on Finance, to whom was referred the bill (H.R. 6675) to provide a
hospital insurance program for the aged under the Social Security Act with a
supplementary health benefits program and an expanded program of medical
assistance, to increase benefits under the old-age, survivors, and disability
insurance system, to improve the Federal-State public assistance programs, and for
other purposes, having considered the same, report favorably thereon with
amendments and recommend that the bill do pass.

PART I

I.  BRIEF SUMMARY

The overall purpose of H.R. 6675 is as follows:
First, to provide a coordinated approach for health insurance and medical care
for the aged under the Social Security Act by establishing three new health care
programs:  (1) a compulsory hospital-based program for the aged; (2) a voluntary
supplementary plan to provide physicians' and other supplementary health services
for the aged; and (3) an expanded medical assistance program for the needy and
medically needy aged, blind, disabled, and families with dependent children.

Second, to expand the services for maternal and child health, crippled children,
child welfare, and the mentally retarded, and to establish a 5-year program of
'special project grants' to provide comprehensive health care and services for
needy children (including those who are emotionally disturbed) of school age or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

S. REP. 89-404                                                                Page 2

S. REP. 89-404, S. Rep. No. 404, 89TH Cong., 1ST Sess. 1965, 1965 U.S.C.C.A.N.
1943, 1965 WL 4458 (Leg.Hist.)

**(Cite as: 1965 U.S.C.C.A.N. 1943)**

preschool age.
    **\*1944** Third, to revise and improve the benefit and coverage provisions and the
financing structure of the Federal old-age, survivors, and disability insurance
system by--
    (1) increasing benefits by 7 percent across the board with a $4 minimum increase
for a worker who retired at age 65 or older;
    (2)  continuing benefits to age 22 for children attending school;
    (3)  providing actuarially reduced benefits for widows at age 60;
    (4)  liberalizing the definition of disability, providing disabled child's
benefits with respect to disability before age 22, providing rehabilitation
services for disabled workers, and facilitating determinations of disability;
    (5) limiting the duplication of disability benefits and those under workmen's
compensation;
    (6)  paying benefits on a transitional basis to certain persons currently 72 or
over who are now ineligible;
    (7)  increasing the amount an individual is permitted to earn without losing
benefits;
    (8)  amending the coverage provisions by--

## \* The requested pages begin below \*

or refunded, the amount credited or refunded, plus any interest allowed, must be
repaid before January 1, 1968, or, if later, the first day of the third year after
the year in which the organization files its waiver certificate.
    In addition, the so-called validation of wages is to be permitted only for
remuneration received for service which is performed during the period for which
an organization's waiver is effective.  Thus, former employees of an organization
which has made erroneous reports receive no greater retroactive social security
coverage than employees who are employed by the organization on the date the
organization files its waiver certificate and are covered only for the retroactive
period for which the certificate is made effective.

### Effective dates of validating provisions

    Section 316(c)(2) of the bill provides that the provisions of section 105(b) of
the Social Security Amendments of 1960, as amended by the bill, will become
effective upon enactment of the bill.  The provisions of the existing section
105(b) of the Social Security Amendments of 1960 will continue to apply to
requests for validation filed before enactment of the bill.  The filing of a
request by an individual for validation under the existing provisions of section
105(b) of the Social Security Amendments **\*2183** of 1960 does not bar him from
filing another request for validation under section 105(b) as amended by the bill.
    Section 316(d) of the bill permits the validation of erroneously reported wages
paid to employees of a nonprofit organization which has filed a waiver certificate
but which nevertheless failed to provide effective social security coverage for
some of its employees.  Under section 316(d), remuneration paid to an individual
for service which is excluded from employment under title II of the Social

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

S. REP. 89-404                                                                Page 3

S. REP. 89-404, S. Rep. No. 404, 89TH Cong., 1ST Sess. 1965, 1965 U.S.C.C.A.N. 1943, 1965 WL 4458 (Leg.Hist.)

**(Cite as: 1965 U.S.C.C.A.N. 1943)**

Security Act, and which is performed during the period in which the organization had in effect a waiver certificate under section 3121(k)(1) of the Internal Revenue Code of 1954, may be deemed to constitute remuneration for employment for purposes of title II of the Social Security Act if any amount has been paid as social security taxes with respect to such remuneration on or before the date of enactment of this act, if the service would have constituted employment as defined in section 210 of the Social Security Act if the requirements of section 3121(k)(1) of the code had been satisfied, and if the individual was listed at any time during the period the organization had a waiver certificate in effect under section 3121(k)(1) of the Internal Revenue Code as a concurring employee, or he filed a validation request under section 105(b) of the Social Security Amendments of 1960 as in effect prior to the enactment of this act (but such listing or validation request was not effective with respect to the service being validated by this subsection).

    SECTION 317.  COVERAGE OF TEMPORARY EMPLOYEES OF THE DISTRICT OF COLUMBIA

    Sections 317(a) and 317(b) of the bill amend the Social Security Act (sec. 210(a)(7)) and the Internal Revenue Code of 1954 (sec. 3121(b)(7)) to include in the definition of employment services performed by certain temporary employees of the District of Columbia. Under the amendments, service performed in the employ of the District of Columbia, or any wholly owned instrumentality thereof, is included as employment if such service is not covered by a retirement system established by a law of the United States, except that the extension of coverage is not to apply to service performed:  (1) In a hospital or penal institution by a patient or inmate thereof, (2) in a hospital of the District of Columbia by student dental intern or as a medical or dental resident-in-training) included under section 2 of the act of August 4, 1947 (5 U.S.C. 1052), (3) on a temporary basis in certain emergencies, or (4) as a member of a board, committee, or council of the District of Columbia paid on a per diem, meeting, or other fee basis.

    Section 317(c) of the bill amends section 3125 of the Internal Revenue Code of 1954 (relating to returns in the case of governmental employees in Guam and American Samoa) by changing the heading thereof and adding a new subsection (c). The new subsection (c) provides that the return and payment of the employee and employer taxes imposed under chapter 21 of the code (Federal Insurance Contributions Act) with respect to services performed as employees of the District of Columbia, or of any wholly owned instrumentality of the District of Columbia, may be made by the Commissioners of the District of Columbia or by such agents as they may designate.  A person making such return may, for convenience of *2184 administration, make payments of the employer tax imposed under section 3111 without regard to the dollar limitations in section 3121(a)(1) (although this subsection would not authorize such person to disregard these dollar limitations as to remuneration includible in returns made by him). The purpose is to relieve a person making a return on behalf of any department or agency of the District of Columbia or any instrumentality wholly owned thereby, of any necessity for ascertaining whether any wages have been reported for a particular employee by any other reporting unit of such government or instrumentality.

                    © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

S. REP. 89-404                                                                            Page 4

S. REP. 89-404, S. Rep. No. 404, 89TH Cong., 1ST Sess. 1965, 1965 U.S.C.C.A.N.
1943, 1965 WL 4458 (Leg.Hist.)

**(Cite as: 1965 U.S.C.C.A.N. 1943)**

Section 317(d) of the bill amends section 6205(a) of the Internal Revenue Code
of 1954 by adding a new paragraph (4). The new paragraph (4) provides that the
Commissioners of the District of Columbia and each agent designated by them,
pursuant to section 3125 of the code, to make returns of the employee and employer
taxes imposed under the Federal Insurance Contributions Act, will be deemed to be
a separate employer for purposes of section 6205(a) of the code, relating to
adjustments of underpayments of such taxes. Thus, adjustments of underpayments
will be made by the reporting unit by which the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.