

**U.S. Department of Justice**

**Tax Division**

*Please reply to: Civil Trial Section, Northern Region*
*P.O. Box 55*
*Ben Franklin Station*
*Washington, D.C. 20044*

*Facsimile No. (202) 514-5238*
*Trial Attorney: Stephen T. Lyons*
*Attorney's Direct Line: (202) 307-6546*

STLyons
5-36-10225
CMN 2005104714

August 29, 2006

**FEDERAL EXPRESS**

Honorable Douglas P. Woodlock
United States District Court
District of Massachusetts
U.S. Courthouse
1 Courthouse Way Suite 2300
Boston, MA 02210

Re: United States v. Partners Healthcare System, Inc.
Civ. No. 05-11576-DPW (USDC D. Mass.)

Dear Judge Woodlock:

Pursuant to our letter of August 10, 2006, please find enclosed a copy of defendant's response to our motion for reconsideration in University Hopsital. That response also includes a response to a discovery issue in the University Hopsital case which is not related to our motion for reconsideration. A copy of our reply will be sent to Your Honor on the day it is filed.

Sincerely,

Stephen T. Lyons
Senior Trial Attorney
Tax Division, Department of Justice

Enclosure

cc: Christopher Kliefoth

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**UNIVERSITY HOSPITAL, INC.,**<br><br>Defendant. | Case No. 1:05CV445<br><br>Judge Beckwith<br><br>Magistrate Black<br><br>**DEFENDANT'S RESPONSE TO BOTH PLAINTIFF'S MOTION FOR RECONSIDERATION (DOC. 37) AND PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE'S NONDISPOSITIVE PRETRIAL ORDER (DOC. 39)** |

## I. INTRODUCTION

Two motions, filed within days of each other by the Plaintiff, are pending before this Court. First, on August 9, 2006 the Plaintiff filed a motion (Doc. 37) asking this Court to reconsider its order (Doc. 31) denying Plaintiff's motion for summary judgment. Three days later on August 12, 2006 the Plaintiff filed a second motion (Doc. 39) objecting to the Magistrate Judge's nondispositive pretrial order (Doc. 34) which refused to incorporate in a protective order some of the language proposed by Plaintiff. Plaintiff does not cite either an intervening change in the law or newly discovered material evidence in support of its motions, and this Court should deny both motions as unfounded and mere "Pavlovian Responses" to adverse rulings. *Smith v. Bradshaw,* 2006 U.S. Dist. LEXIS 31195 (N.D. Ohio May 8, 2006) (Exhibit 1); *Meekison v. Ohio Dep't of Rehabilitation & Correction*, 181 F.R.D. 571, 572 (S.D. Ohio 1998).

## II. FACTUAL BACKGROUND

University Hospital has filed lengthy memoranda and numerous affidavits in opposition to both Plaintiff's original motion for summary judgment and its motion to compel (Docs. 19 and

20). As a matter of efficiency, University Hospital will not repeat its prior filings but instead incorporates as if fully set forth in this memorandum its earlier filings opposing both of the Plaintiff's motions.

## III. LEGAL ARGUMENT

### A. The Court should not Change its Ruling Denying Plaintiff's Motion for Summary Judgment

#### 1. Motions for reconsideration are disfavored

The Federal Rules of Civil Procedure do not provide for motions for reconsideration. These motions inherently tax judicial resources and run counter to the doctrine of the law of the case, a doctrine that recognizes that a court's decision should be given effect in successive stages of the same litigation in order to ensure judicial efficiency and avoid endless repetition. *United States v. Todd,* 920 F.2d 399, 403 (6th Cir. 1990). While this Court has the *power* to revisit its prior order, it "should be loathe to do so in the absence of extraordinary circumstances. ..." *Id.*

Motions for reconsideration certainly are "not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). In *Meekison*, the movant's "new" arguments, based on the same law, cases and arguments amounted to little more than a disagreement with the court's prior decision. As that court observed, a motion predicated on "such a tenuous legal basis is a waste of judicial resources." 181 F.R.D. at 572. After observing that "mere dissatisfaction with a Court's ruling is an inappropriate and insufficient ground to support a motion for reconsideration," the *Meekison* court stated: "This Court, just like all other courts, works diligently and strives carefully to issue its best opinion while deciding any motion. Unless the parties can convince this Court that the standards described above have been met (i.e. to correct 'manifest errors of law or to present newly discovered evidence'), this Court strongly believes that the parties' energies can be better

served by pursuing their rearguments at the proper time on appeal. Filing a motion to reconsider should not be a 'Pavlovian Response' to an adverse ruling." *Id.*

**2. The Court did not error when it denied the Plaintiff's motion**

In its motion for reconsideration, Plaintiff's only argument is that this Court erred as a matter of law when it denied the Plaintiff's motion for summary judgment. Plaintiff is mistaken.

As this Court's prior Order (Doc. 31, p. 6) reflects, FICA taxes are only paid on "wages." 26 U.S.C. § 3121(a). "Wages" means "remuneration for employment." *Id.* Not all amounts received by individuals are remuneration for employment. For example, stipends provided to individuals to enable them to learn are not.[1] In addition, while § 3121(a) creates a general rule that FICA taxes are due on "remuneration for employment," Congress also has created exceptions to that general rule in § 3121(b). One of these express statutory exceptions is known as the "student exception."

The United States' prior motion for summary judgment only could have succeeded if this Court **presumptively** assumed against the nonmoving party both (1) that stipends provided to medical residents, in any factual context, are "remuneration for employment" **AND** (2) that medical residents can never meet requirements set forth in the student exception. Applying the correct standard applicable to a motion for summary judgment (standards which Plaintiff does not contest), this Court correctly refused to make those presumptions and accordingly denied Plaintiff's motion.

---

[1] There is a difference between whether the stipends are subject to *income* tax and to FICA tax. *See* Rev. Rul. 60-378, 1960-2 C.B. 38 ("even though part of a Section 117 scholarship or fellowship grant must be included in the recipient's gross income because of the limitations prescribed in Section 117(b)(2) of the Code, no part of the grant is subject to the tax on self-employment income ... [and] such grants are not 'wages' and, hence, are not subject to ... [FICA tax].") Similarly, the IRC requires many state employees to pay income tax but not FICA tax.

**a. This Court properly refused to presume that medical residents can never meet requirements set forth in the student exception**

Even though Plaintiff argues that the Court's discussion of the student exception is erroneous as a matter of law, Plaintiff actually does not dispute the Sixth Circuit and United States Supreme Court precedents that are fundamental to the Court's Order. As this Court correctly stated in its Order (Doc. 31, pp 12-13), when interpreting a statute a court must begin with its plain language and only may resort to a review of the legislative history to ascertain Congressional intent if the statute is ambiguous. *Olden v. LeFarge, Inc.*, 383 F.3d 495, 502 (6th Cir. 2004). In addition, if the statute is clear, the court should not review predecessor statutes in search of Congressional intent. *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004). Finally, the court should not review the legislative history of a statute to create an ambiguity where none exists. *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994). These undeniable and uncontested principles, recognized repeatedly in binding precedents, control and require the denial of Plaintiff's motion.

As this Court correctly observed, Section 3121(b)(10) by its express terms does not make stipends provided to medical residents ineligible for the exception. The statute plainly sets forth that there are only two elements for the exception to apply: (1) the service was performed in the employ of a school, college, or university; and (2) the service was performed by a student who is enrolled and regularly attending classes at such school, college, or university. This is not a case in which the Court overlooked language in § 3121(b)(10) that excluded the application of that provision to medical residents. As a result, in denying Plaintiff's motion for summary judgment, this Court at the outset of its discussion of the issue properly concluded that § 3121(b)(10) is unambiguous in that it categorically does not make stipends paid to medical residents ineligible for the exception (Doc. 31, p. 13).

In its prior Order, this Court also correctly observed that Congress knows how to create exceptions to a provision when it so desires. In support of this point, the Court cited 3121(b)(6). In that statutory section, Congress created multiple levels of exception. That provision in relevant part provides:

> § 3121. Definitions.
>
> (a) Wages. For purposes of this chapter [26 USCS §§ 3101 et seq.], the term "wages" means all remuneration for employment...
>
> ...
>
> (b) Employment. For purposes of this chapter [26 USCS §§ 3101 et seq.], the term "employment" means any service, of whatever nature, ... ; **except** that such term shall not include –
>
> ...
>
> (6) service performed in the employ of the United States or any instrumentality of the United States if such service is performed
>
> ...
>
> (B) by any individual as an employee included under section 5351(2) of title 5, United States Code (relating to certain interns, student nurses, and other student employees of hospitals of the Federal Government), **other than as** a medical or dental intern or a medical or dental resident in training;

In further support of its point, the Court noted that § 3121(b)(7) creates even more levels of exceptions to exceptions. That section in relevant part states:

> § 3121. Definitions.
>
> (a) Wages. For purposes of this chapter [26 USCS §§ 3101 et seq.], the term "wages" means all remuneration for employment...
>
> ...
>
> (b) Employment. For purposes of this chapter [26 USCS §§ 3101 et seq.], the term "employment" means any service, of whatever nature, ... ; **except** that such term shall not include –
>
> ...

> (7) service performed in the employ of a State, or any political subdivision thereof, or any instrumentality of any one or more of the foregoing which is wholly owned thereby, **except** that this paragraph shall not apply in the case of –
>
> . . .
>
> (C) service performed in the employ of the District of Columbia or any instrumentality which is wholly owned thereby, if such service is not covered by a retirement system established by a law of the United States (other than the Federal Employees Retirement System provided in chapter 84 of title 5, United States Code [5 USCS §§ 8401 et seq.]); **except** that the provisions of this subparagraph shall not be applicable to service performed –
>
> . . .
>
> (ii) by any individual as an employee included under section 5351(2) of title 5, United States Code (relating to certain interns, student nurses, and other student employees of hospitals of the District of Columbia Government), **other than as** a medical or dental intern or as a medical or dental resident in training.

Thus, under § 3121(b)(7) there literally are exceptions to exceptions to exceptions to exceptions.

Now in its motion for reconsideration, Plaintiff at length discusses whether or not the Court correctly understood whether medical residents employed by the District of Columbia or the states are or are not covered by FICA. All of that is immaterial to this case and ignores the Court's unmistakable point. These two sections – §§ 3121(b)(6) and (7) – demonstrate that Congress is skilled at drafting exceptions when that is what it intends. As a result, it is completely inappropriate for Plaintiff to resort to legislative history in an attempt to re-write the statute to insert new exceptions into § 3121(b)(10).

In its motion for reconsideration, Plaintiff also challenges this Court's discussion of the amendments to the Social Security Act after the decision in *St. Luke's Hosp. Ass'n of Cleveland v. United States*, 333 F.3d 157 (6th Cir. 1964). Plaintiff takes issue with the Court's reading of the legislative history – in effect arguing that just as the statute does not mean what it says, so too

the House Report must mean something completely different than the meaning the plain words convey. In making this argument, Plaintiff only repeats arguments that it previously made and this Court soundly rejected. In fact, it cites its prior memorandum for support, adding nothing new to the discussion. In light of the repetitive nature of this argument, it should not even be considered by the Court. As the *Meekison* court recognized, a motion repeating earlier arguments "is a waste of judicial resources." Plaintiff's return to the legislative history also misses the Court's initial and fundamental point that legislative history cannot be creatively employed to trump a statute's unambiguous language.

**b. This Court properly refused to presume that stipends provided to medical residents, in any factual context, are "remuneration for employment"**

This Court's prior Order correctly noted that an analysis of the facts and circumstances is required to answer the question of whether stipends paid to medical residents are (i) in the *nature* of scholarships or fellowships, or (ii) remuneration for services subject to FICA taxation.

There is a material difference between a stipend being a "qualified scholarship" (and therefore not subject to **income** tax) and a stipend being in the nature of a scholarship or fellowship (and therefore not subject to **FICA** tax).[2] Plaintiff in its prior filings unfairly mischaracterized University Hospital's argument in this regard by suggesting that it was University Hospital's position that the stipends met Section 117's "qualified scholarship" requirements (see for example, Doc. 17, p. ii). Contrary to Plaintiff's misdirection, University

---

[2] Section 117 was amended in 1986 to subject many scholarships to income tax even though, both before and after 1986, they would not be subject to FICA tax. For example, if a student received an award for obtaining the best grade in a class or on a paper, that amount would be in the nature of a stipend or scholarship under Section 117(c) and not be subject to FICA taxation either before or after 1986 because it was not paid as remuneration for services. The same award payment also would not have been subject to income taxation before 1986. After the legislative changes to Section 117 in 1986, the student would be required to pay income tax (but not FICA tax) on the scholarship payment unless, for example, the student applied the scholarship payment to the cost of tuition and books and took such other steps as required by post-1986 Section 117. University Hospital refers the Court to its detailed discussion of these issues in its prior filing. (Doc. 19, pp. 28-37.)

Hospital is not arguing that payments to medical residents are "qualified scholarships."

Rather than taking the position that stipends are "qualified scholarships," University Hospital contends that the stipends are in the "*nature*" of scholarships or fellowships and not remuneration for services as discussed in cases and regulations under Section 117. *See* PLR 200042027 (July 25, 2000) (Exhibit 2), PLR 200226005 (March 3, 2002) (Exhibit 3), and PLR 200607017 (March 7, 2005) (Exhibit 4) (all stipends FICA tax exempt; IRS notes that taxpayers may wish to advise participants in its research program that amounts of scholarships exceeding their qualified tuition and related expenses will be subject to income tax). *See also* Tech. Adv. Mem. 9525004 (June 23, 1995) (Exhibit 5) and 9640002 (October 4, 1996) (Exhibit 6) (IRS determined that the stipends paid were taxable as income under Section 117 but noted that the application of FICA taxes depends on the nature of the employment and the status of the grantor). At the very least, as University Hospital previously outlined (Doc. 19, pp. 28-37), the cases and IRS guidance make it clear that an analysis of all the facts and circumstances is necessary to determine whether the stipends are in the nature of a scholarship or fellowship (and therefore not subject to FICA tax). This inquiry should not be determined adversely to University Hospital on Plaintiff's motion for summary judgment.

Finally, as University Hospital previously explained, even if a substantial quid pro quo caused a portion of medical resident stipends to be classified as "remuneration for services" rather than as payments in the nature of a scholarship under a Section 117(c) type of analysis, any portion classified as remuneration for services would still be eligible for exclusion from FICA taxation under the student exception of Section 3121(b)(10). Plaintiff's assertion that there is no "substantiality factor" to this analysis is contrary to the law. In *Bingler v. Johnson,* 394 U.S. 741 (1969), for example, the court applied Treas. Reg. §1.117-4(c) to the facts to determine

whether the stipends paid were in the nature of scholarships or fellowships with no requirement of any substantial quid pro quo from the recipients. 394 U.S. at 751. In *Mizell v. United States*, 663 F.2d 772 (8th Cir. 1981), the court considered whether the primary purpose of medical resident activities was to further their education and training, and determined that there was substantial evidence for the jury to conclude that the residents' stipends were in the nature of scholarships or fellowship grants, not payment for services. Plaintiff's assertion also is quite surprising given that the IRS's own proposed regulations (Prop. Treas. Reg. Sec. 1.117-6(d)(3)) require, after an intense factual evaluation, a bifurcation to treat only a portion of payments as FICA taxable if only a portion of a stipend is remuneration for services.

For all these reasons, the Court reached the correct result in denying Plaintiff's dispositive motion on this issue in this case.

**B. The Court should not Modify the Magistrate's Discovery Rulings**

**1. Magistrates are accorded broad discretion in resolving discovery disputes**

This Court should overturn Magistrate Judge Black's nondispositive discovery order only if it is clearly erroneous. *Chesher v. Allen*, 122 Fed. Appx. 184, 187 (6th Cir. 2005) (Exhibit 7) ("Rule 72(a) of the Federal Rules of Civil Procedure requires that a district court judge find a magistrate judge's decisions concerning nondispositive matters 'clearly erroneous' before reversing any such decisions.") A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). A party seeking to overturn a magistrate's order resolving a discovery dispute bears a heavy burden because magistrate judges are afforded broad discretion in this area. *Schwartz v. Metro. Prop. & Cas. Ins. Co.*, 393 F. Supp. 2d 179, 180-181 (D.N.Y. 2005).

**2. Magistrate Judge Black correctly refused to incorporate into a protective order language proposed by Plaintiff**

Plaintiff objects to a protective order issued by the Magistrate Judge. The information to be protected is narrow in scope and includes only individually identifiable healthcare information and educational records.

Inherent in the nature of residents' education is the witnessing and participation by the residents in patient care. (See Affidavits of Andrew Filak filed in opposition to Plaintiff's motion for summary judgment and motion to compel, Docs. 19 and 20.) Consequently, documents related to residency programs can include individually identifiable healthcare information of not only the residents themselves but also of the patients in the hospital settings where the residents receive part of their education. In addition, the residency programs generate records relating to the education of the residents – such as evaluations of the residents' progress. Plaintiff had requested discovery of documents and information that would require University Hospital to disclose both individually identifiable healthcare information of patients and residents but also educational records. *Id.*

Plaintiff now suggests that grounds may not exist to justify the entry of **any** protective order. Plaintiff states: "To the extent that grounds exist (see footnote 1, infra) for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the magistrate's decision is contrary to law." (Doc. 39-2, p. 4.) But Plaintiff cannot contest the need for a protective order when it not only agreed with opposing counsel to the entry of such an order, it even attached a draft order to its original motion. In addition, at the hearing on the protective order, Plaintiff never suggested in any way that grounds did not exist for the entry of some form of protective order. In fact, Plaintiff stated: "[T]hese documents need to be produced subject to an appropriate Protective Order, and we dispute the language or they disputed the proposed

language that we seek to include." (Doc. 36, p. 52.) Plaintiff clearly has waived any argument about the need for such an order to protect the confidentiality of any individually identifiable healthcare information or any records related to the training of the residents (other than directory information).

In the memoranda filed with the Magistrate Judge and in the related hearing, Plaintiff did argue that the protective order should authorize Plaintiff to disclose, without any judicial oversight, confidential information to "any Federal or State agency with authority to enforce laws regulating any activity relating to the requested information." The Magistrate properly refused to include such a provision.

The Magistrate Judge's order is consistent with numerous protective orders which have specified that parties only may use the confidential information that they obtained through discovery for the purpose of preparing for and conducting the litigation in which the documents were produced. Opposing Plaintiff's motion to compel, University Hospital filed, by way of example, twelve such orders issued in other cases by courts in this district (Doc. 19).

The Magistrate Judge's Order also is consistent with the policy set forth by Congress in the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").[3] One of the purposes of that Act is to "ensure the integrity and confidentiality of [patient] information." 42 U.S.C. § 1320d-2(d)(2)(A); *see also* 65 Fed. Reg. 82462, 82469 (Dec. 28, 2000) (stating that "Congress recognized the challenges to the confidentiality of health information presented by the increasing complexity of the health care industry, and by advances in health information systems

---

[3] Plaintiff's argument that HIPAA may not apply misses the mark because it would require the Court to assume that the healthcare information only will be found in residents' employment records. In light of the breadth of Plaintiff's discovery requests, that is unfounded. In addition, at this point no one can really question the need to protect patient privacy or Congress' recognition of this compelling interest. In addition, as Plaintiff's own discussion indicates, this argument would require the Court to conclude as a matter of law (and contrary to the filings of University Hospital) (continue)

technology and communications.") HIPAA's stated purpose of protecting a patient's right to the confidentiality of his or her individual medical information is a compelling federal interest. *Crenshaw v. Mony Life Ins. Co.*, 318 F. Supp. 2d 1015, 1028 (D. Cal. 2004).

The Magistrate's Order also is consistent with the broad protection that Congress has enacted to safeguard the privacy of educational records through the Family Education Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g. *United States v. Miami Univ.*, 294 F.3d 797, 803 (6th Cir. 2002) ("For the last quarter of a century, the FERPA has helped protect the privacy interests of students and their parents. ... In other words, Congress places the privacy interests of students and parents above the federal government's interest in obtaining necessary data and records.")

The Magistrate's Order is consistent with the legitimate needs of Plaintiff for access to information for the purposes of this case. University Hospital never contended that production of confidential information in this case would make that information immune from discovery in some other matter. Quite to the contrary, the protective order only would limit the ability of those who obtain the information through this litigation from disclosing confidential information to others or using that information for purposes other than for the purpose of preparing for and conducting the litigation in which the documents were produced. This is the same limitation – no less and no more – than the restrictions set forth in the numerous protective orders mentioned above. In fact, at oral argument Plaintiff admitted that regardless of the protective order it would be able to obtain the information through a subpoena. (Doc. 36, p. 14.)

Plaintiff simply never articulated any prejudice that it would suffer by the exclusion of

---

(continued)
that medical residents are not students and that they are not employed by a school, college, or university. For similar reasons, Plaintiff's argument that FERPA does not apply is misplaced.

the requested language. Quite to the contrary, the Order reasonably takes into account any need by Plaintiff to disclose the documents to others by expressly providing that if such a need arises Plaintiff can apply to the Court for permission to make such disclosure.

Objecting to the Magistrate's decision, Plaintiff relies on decisions in *United States of America ex rel. Kaplan v. Metropolitan Ambulance & First-Aid Corp.*, 395 F.Supp.2d 1 (E.D.N.Y. 2005) and *United States ex rel. Stewart v. The Louisiana Clinic*, 2002 WL 31819130 (E.D. Louisiana 2002). This reliance is misplaced. First, neither *Kaplan* nor *Stewart* hold that it would be error for a court to enter into a protective order with the restrictions imposed by the Magistrate's Order. Even if the Magistrate may have had the discretion to enter an order with the language requested by the Plaintiff, that does not mean that it is clearly error to refuse to incorporate those terms. Second, unlike in *Kaplan* and *Stewart*, in this case there have been remarks/"jokes" by Plaintiff's counsel that could be interpreted or misinterpreted as threatening misuse of information produced during discovery. Finally, both *Kaplan* and *Stewart* are qui tam cases involving allegations of fraud on the Medicare program (the federal health care program that provides health care coverage to individuals who are age 65 or older or have a disability). Since both cases included allegations of health care fraud, the government's involvement in those cases was clearly related to its health oversight authority. Accordingly, in those cases the defendants were permitted under HIPAA to disclose patient medical records containing patient information to the government for health oversight activities, 45 CFR § 164.512(d), and pursuant to provision permitting disclosure in response to a discovery request in the course of a judicial proceeding.[4] The same is not true here. This is a tax case. The government's role in this

[4] Pursuant to 45 CFR § 164.512(e)(2), where a covered entity may disclose information pursuant to both 45 CFR § 164.512(e) and another subsection of 45 CFR § 164.512, the covered entity may not rely on 45 CFR 164.512(e)(1) to require provision of notice to the individual or a qualified protective order since the other subsection relied upon (continue)

litigation is not as a health oversight agency; rather, the government's involvement in this case relates to its authority to levy and collect taxes and it has requested production of the documents at issue in order to assist it in its tax case against University Hospital. The provisions at 45 CFR 164.512(d) are simply inapplicable to the facts of this case.[5]

Finally, the Magistrate's decision is consistent with the magistrate decision in *Albany Med. Ctr. v. United States*, No. 1:04-cv-1399 (N.D.N.Y May 11, 2006) where the magistrate judge in a tax refund FICA case rejected this Plaintiff's same request for the unrestricted right to disclose confidential information to any federal or state agency. Of course, unlike the *Albany* matter, the Magistrate judge in this case has included language permitting Plaintiff in the future to seek leave of court to disclose confidential information "to any Federal or State agency with authority to enforce laws regulating any activity relating to the requested information."

## IV. CONCLUSION

Both this Court's Order denying Plaintiff's motion for summary judgment and the Magistrate judge's ruling on the protective order are well-considered decisions. Plaintiff's motions are without merit and should be denied.

---

(continued)
does not contain such restrictions. This section is not relevant to this case, however, since only 45 CFR § 164.512(e) is applicable.

[5] Plaintiff's argument that the requested information can be disclosed consistent with the HIPAA provision permitting a covered entity to disclose protected health information "for law enforcement purposes," 45 CFR 164.512(f), also must fail. Under 45 CFR § 164.512(f), a covered entity may disclose protected health information "[i]n compliance with and as limited by the relevant requirements of" a court order or court-ordered warrant, a subpoena or summons issued by a judicial officer, a grand jury subpoena, or an administrative request (including a civil or an authorized investigative demand, or similar process authorized under the law, provided certain criteria are met.) No such court order, court-issued summons or subpoena, or administrative request exists in this case. Accordingly, Plaintiff's assertion that University Hospital may rely on this provision to disclose the requested information is without merit.

Respectfully submitted,

s/Ted T. Martin
Ted T. Martin (0014204)
Thomas W. Kahle (0018142)
Baker & Hostetler LLP
312 Walnut Street, Suite 3200
Cincinnati, OH 45202-4074
Tel.: (513) 929-3400
Fax: (513) 929-0303
e-mail: **tmartin@bakerlaw.com**
**tkahle@bakerlaw.com**

Jeffrey H. Paravano (0056201)
Baker & Hostetler LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH 44114-3485
Tel.: (216) 621-0200
Fax: (216) 696-0740
email: **jparavano@bakerlaw.com**

Adam Gropper (DC#469468)
Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
Tel.: (202) 861-1500
Fax: (202) 861-1783
email: **agropper@bakerlaw.com**

Attorneys for Defendant
University Hospital, Inc.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on August 28, 2006, electronically in accordance with the method established under this Court's Standing Orders for CM/ECF filings and upon all parties in the electronic filing system in this case.

s/Ted T. Martin
Ted T. Martin (0014204)

90468, 00030, 501144098.6