# McDermott
# Will&Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Munich
New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

Mark H. Churchill
Attorney at Law
mchurchill@mwe.com
202.756.8058

September 13, 2006

<u>VIA ECF & FEDERAL EXPRESS DELIVERY</u>

The Honorable Douglas P. Woodlock
United States District Court Judge
District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA   02210

> Re:    *United States v. Partners Healthcare System, Inc.*, No. 05-11576-DPW
> (U.S.D.C. D. Mass.)

Dear Judge Woodlock:

As counsel to the defendant in the above-noted case, I write to advise the Court of another recent federal court decision denying summary judgment for the government in a FICA refund suit.

Please find enclosed the September 8, 2006 opinion of Judge Kennelly in *The University of Chicago Hospitals v. United States* (U.S.D.C. N.D. Ill.). The court rejected the United States' argument that "UCH residents are categorically ineligible for the student exclusion [to FICA]." Sept. 8, 2006 Order at 1. In so holding, Judge Kennelly endorsed the case-by-case examination approach applied by the Eight Circuit, *see Minnesota v. Apfel*, 151 F.3d 742, 748 (8th Cir. 1998), and explicitly declined to follow the reasoning used in *United States v. Mount Sinai Medical Center of Florida, Inc.*, 353 F. Supp. 2d 1217 (S.D. Fla. 2005) – the only federal court decision to date to rule that medical residents can never be eligible under the student exception in 26 U.S.C. § 3121(b)(10). Sept. 8, 2006 Order at 1-8.

Sincerely,

Mark H. Churchill

cc:    Stephen T. Lyons, Esq. (Trial Counsel, U.S. Department of Justice – via ECF)

Enclosure

WDC99 1283278-1.057158.0039

U.S. practice conducted through McDermott Will & Emery LLP.

600 Thirteenth Street, N.W. Washington, D.C. 20005-3096  Telephone: 202.756.8000  Facsimile: 202.756.8087  www.mwe.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE UNIVERSITY OF CHICAGO HOSPITALS, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 05 C 5120 |
| UNITED STATES OF AMERICA | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The University of Chicago Hospitals (UCH) has sued the United States of America to

recover Federal Insurance Contributions Act (FICA) taxes it paid in 1995 and 1996 on behalf of

its medical residents. Specifically, UCH argues that under federal tax laws, its medical residents

are students for whom it need not pay FICA taxes. *See* 26 U.S.C. § 3121(b)(10).[1] The

government has moved for summary judgment, arguing that UCH residents are categorically

ineligible for the student exclusion. UCH responds that summary judgment is inappropriate

because the statute and the regulations require the Court to evaluate individually the student

exclusion eligibility of each type of UCH resident. For the reasons stated below, the Court

denies the United States's motion.

---

[1] Because this case involves UCH's tax liability for 1995 and 1996, references are to the
1995 version of the United States Code and the Code of Federal Regulations. Where the Court
references a different version of either code, we will so indicate.

**Factual background**

UCH administers graduate medical education programs for residents in a variety of specialties. During 1995 and 1996, UCH and its residents paid the IRS a total of $5,572,705 in FICA taxes ($2,757,915 for 1995 and $2,814,789 for 1996). On April 15, 1999 and April 15, 2000, respectively, UCH filed claims for refund of all 1995 and 1996 FICA taxes it paid on behalf of its medical residents. The IRS never disallowed these claims.

On September 7, 2005, UCH timely filed a refund action. Govt. 56.1 Stmt. ¶¶ 6, 13, 15-16. The parties agreed to conduct discovery in two phases: a first phase directed at the present summary judgment motion and a second phase if the present motion were denied.

**Discussion**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When evaluating a motion for summary judgment, the Court views the facts in favor of the non-moving party and draws all reasonable inferences in its favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The question presented here is primarily one of law: whether UCH is categorically barred from invoking the student exclusion with regard to wages paid to its medical residents.

FICA taxes are contributions to the nation's Social Security, Medicare, and Medicaid systems, and they are levied as taxes on wages paid for employment. *See* 26 U.S.C. §§ 3101, 3121(a). The Internal Revenue Code defines employment as "any service . . . performed by an employee for the person employing him," but it also excludes several categories of service from the definition of employment. 26 U.S.C. § 3121(b). Particularly relevant to this case, section

3121(b)(10) excludes certain services performed by students, namely

> (10) service performed in the employ of –
>
>> (A) a school, college, or university, or
>>
>> (B) an organization described in section 509(a)(3) if the organization is organized, and at all times thereafter is operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of a school, college, or university and is operated, supervised, or controlled by or in connection with such school, college, or university...
>
> if such service is performed by a student who is enrolled and regularly attending classes at such school, college, or university.

26 U.S.C. § 3121(b)(10).

Section 31.3121(b)(10)-2 of the Treasury Regulations provides further guidance

regarding what types of services qualify for the exclusion under section 3121(b)(10):

> (b) For purposes of this exception, the amount of renumeration for services performed by the employee in the calendar quarter, the type of services performed by the employee, and the place where the services are performed are immaterial. The statutory tests are (1) the character of the organization in the employ of which the services are performed as a school, college, or university, or an organization described in paragraph (a)(2) of this section, and (2) the status of the employee as a student enrolled and regularly attending classes at the school, college, or university by which he is employed or with which his employer is affiliated.
>
> (c) The status of the employee as a student performing the services shall be determined on the basis of the relationship of such employee with the organization for which the services are performed. An employee who performs services in the employ of a school, college, or university, as an incident to and for the purpose of pursuing a course of study at such school, college, or university has the status of a student in the performance of such services. An employee who performs services in the employ of an organization described in paragraph (a)(2) of this section, as an incident to and for the purpose of pursuing a course of study at a school, college, or university with which such organization is affiliated, has the status of a student in the performance of such services.
>
> (d) The term "school, college, or university" within the meaning of this exception is to be taken in its commonly or generally accepted sense.

26 C.F.R. 31.3121(b)(10)-2.

Case 1:05-cv-05120    Document 39    Filed 09/08/2006    Page 4 of 8

The government suggests that the Court should first examine the legislative history of the student exclusion to determine whether medical residents are covered by section 3121(b)(10). It contends that the legislative history of related exclusions, particularly the former medical intern exclusion, proves that Congress never intended to exclude the work of medical residents from the definition of employment. *See United States v. Mt. Sinai Med. Ctr.*, 353 F. Supp. 2d 1217, 1222 (S.D. Fla. 2005) (relying on legislative history to hold that medical residents are ineligible for the student exclusion as a matter of law).

The Seventh Circuit has held, however, that Treasury regulations, which are issued after notice and comment, are entitled to deference under the standard outlined in *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). *See Bankers Life and Cas. Co. v. United States*, 142 F.3d 973, 983 (7th Cir. 1998). Under this standard, "[i]f the plain meaning of the text either supports or opposes the regulation, then we stop our analysis and either strike or validate the regulation. But if we conclude the statute is either ambiguous or silent on the issue, . . . [w]e examine the reasonableness of the regulation. If the regulation is a reasonable reading of the statute, we give deference to the agency's interpretation." *See id.* (citing *Chevron*, 467 U.S. at 842-43). Though the plain language of section 3121(b)(10) does not clearly indicate whether medical residents are eligible for the student exclusion, the applicable Treasury Regulation provides guidance on how to make the determination. Neither the government nor UCH has argued that the Treasury Regulation is unreasonable. For this reason, the Court defers to the Treasury Regulation in the first instance, obviating the need to examine legislative history at this stage to ascertain the meaning of the statute.

Though the parties agree that the Treasury Regulation is valid and applicable, they

disagree on how it should be interpreted. The government contends that the student exclusion is

limited to individuals who earn a nominal amount of income and that UCH medical residents,

who earn between $41,300 and $52,000 per year, are therefore categorically ineligible for the

exclusion. *See* Def. Ex. 3.

On the other hand, UCH contends that the Treasury Regulation does not limit the scope

of the student exclusion in the way urged by the government. UCH cites the first sentence in

subsection (b) of the regulation, which states that "[f]or purposes of this exception, the amount

of renumeration for services performed by the employee in the calendar quarter...[is]

immaterial." *See* 26 C.F.R. § 31.3121(b)(10)-2(b). Based on this language, UCH argues that the

regulation does not categorically limit the student exclusion to individuals who earn only

nominal income.

The government responds that the statutory and regulatory provisions establishing the

student exclusion implicitly limit the exclusion to students earning nominal income. In making

this argument, the government relies on statements made in House of Representatives Reports

concerning the creation of and amendments to the student exclusion. These statements indicate

that the student exclusion was one of several exclusions targeted at individuals earning nominal

income. *See* H.R. Rep. No. 76-728, at 543 (1939) (stating that the purpose of exclusions from

employment, including the student exclusion, is "to exclude those persons and those

organizations in which the employment is part-time or intermittent and the total amount of

earnings is only nominal, and the payment of the tax is inconsequential and a nuisance."); H.R.

Rep. No. 81-1300, at 260 (1950) (describing student exclusion as part of effort to "continue[] to

exclude service performed for nominal amounts" and "to simplify administration without

Case 1:05-cv-05120    Document 39    Filed 09/08/2006    Page 6 of 8

depriving any significant number of people of needed protection.").

As in the context of statutory construction, the Seventh Circuit has held that when courts are applying government regulations, they need not consult secondary sources unless the plain language of the regulation is ambiguous. *See Marlowe v. Bottarelli*, 938 F.2d 807, 811-12 (7th Cir. 1991). In this case, the Treasury Regulation at issue is unambiguous. It clearly states that the amount of renumeration earned by an individual is immaterial to the applicability of the student exclusion. *See* 26 C.F.R. § 31.3121(b)(10)-2(b). Because the plain language of the Treasury Regulation is clear, there is no need to resort to other sources, such as the agency's interpretation of its regulation or the legislative history of the underlying statute, to determine its meaning. *See Marlowe*, 938 F.2d at 811-12 (agency's own interpretation); *First Nat'l Bank of Chi. v. Standard Bank & Trust*, 172 F.3d 472, 476 (7th Cir. 1999) (legislative history).

The Court notes that the Seventh Circuit has advised courts to look past the plain language of a regulation "where a literal interpretation would lead to an 'absurd result or thwart the purpose of the overall statutory scheme.'" *See First Nat'l Bank,* 172 F.3d at 476 (citing *United States v. Hayward*, 6 F.3d 1241, 1245 (7th Cir. 1993)). In this case, however, the legislative history of the student exclusion does not indicate that effectuating the plain language of the Treasury Regulation would be absurd or contravene the purposes of the statute.

Though the 1939 and 1950 House Reports each indicate that the student exclusion should apply only to individuals earning nominal wages, *see* H.R. Rep. No. 76-728, at 543; H.R. Rep. No. 81-1300, at 260, Congress's drafting choices do not necessarily reflect this intent. In 1939, when Congress first created the student exclusions, it included an income limitation regarding one student exclusion but not the other. *See* Social Security Act Amendments of 1939, ch. 666,

53 Stat. 1385, § 1426(b)(10)(E) ("Service performed in any calendar quarter in the employ of a school, college, or university, not exempt from income tax under section 101, if such service is performed by a student who is enrolled and is regularly attending classes at such school, college, or university, and the renumeration for such service does not exceed $45 (exclusive of room, board, and tuition)"); *id.* § 1426(b)(10)(A) ("Service performed in any calendar quarter in the employ of an organization exempt from income tax under section 101, if – (i) the renumeration for such service does not exceed $45, *or* . . . (iii) such service is performed by a student who is enrolled and is regularly attending classes at a school, college, or university") (emphasis added). Moreover, in 1950, when Congress consolidated the student exclusions, it opted not to include any limitation on renumeration but maintained it for the exclusion for wages earned at a non-profit organization. *See* Social Security Act Amendments of 1950, ch. 809, 64 Stat. 531, § 204(b)(11) ("(A) Service performed in any calendar quarter in the employ of an organization exempt from income tax under section 101, if the renumeration for such service is less than $50; (B) Service performed in the employ of a school, college, or university if such service is performed by a student who is enrolled and is regularly attending classes at such school, college, or university"). These drafting choices indicate that Congress knew how to limit the scope of various exclusions within the language of the Internal Revenue Code but opted not to do so with regard to the student exclusion.[2]  The Court concludes that the legislative history is unclear regarding Congress's intent with regard to the scope of the student exclusion. The Court

---

[2] The Court notes that Congress also amended section 3121(b)(10) in 1973 to add paragraph (B), which extended the student exclusion to certain work for non-profit organizations affiliated with a school, college, or university. Like the 1950 amendments, the 1973 Amendments did not change the primary language of section 3121(b)(10) nor did they create an explicit income limitation on the student exclusion.

therefore cannot find that a literal interpretation of the Treasury Regulation, which comports with the language of the statute, would cause an absurd result or thwart the purposes of the statute.

In making this decision, the Court declines to follow the approach of the *Mt. Sinai* court, which referred to the applicable Treasury Regulation only in passing and described it as not "directly answer[ing] the question in this case." *See Mt. Sinai*, 353 F. Supp. 2d at 1227 n. 6. Instead, we agree with the Eighth Circuit Court of Appeals, which analyzed a parallel Social Security regulation and found that it required a case-by-case approach to determining whether particular services qualified for the student exemption. *See Minnesota v. Apfel,* 151 F.3d 742, 747-48 (8th Cir. 1998); *see also United States v. Mayo Found. for Med. Educ. & Research,* 292 F. Supp. 2d 997, 1010-18 (D. Minn. 2003) (applying Treasury Regulation to determine whether medical residents of Mayo Clinic were eligible for student exclusion). The government has been unable to establish that UCH is not entitled to a particularized review of whether its medical residents qualify for the student exclusion. The Court therefore denies the government's motion for summary judgment.

## Conclusion

For the aforementioned reasons, the Court denies the government's motion for summary judgment [docket no. 22]. The case is set for a status hearing on September 22, 2006 at 9:30 a.m. to set a schedule for the completion of discovery.

MATTHEW F. KENNELLY
United States District Judge

Date: September 8, 2006

8