UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

       Plaintiff,

      v.                                  Case No. 05-11576-DPW

PARTNERS HEALTHCARE
SYSTEM, INC.,

       Defendant.
_____/

UNITED STATES' NOTICE OF SUPPLEMENTAL AUTHORITY

Comes now the United States and notifies this Court of the following supplemental authority that bears on the issues in this case (a copy of the opinion is attached to this Notice for the Court's convenience):

1. <u>Albany Medical Center v. U.S.</u>, dkt. no. 04-1399 (NDNY) decided January 10, 2007.

                                                  MICHAEL J. SULLIVAN
                                                  United States Attorney


                                                  BARBARA HEALY SMITH
                                                Assistant United States Attorney

                                                /s/ stephen t. lyons
                                                STEPHEN T. LYONS
                                                Senior Trial Attorney
                                                Tax Division, CTS Northern Region
                                                Department of Justice
                                                P.O. Box 55
                                                Ben Franklin Station
                                                Washington, D.C. 20044
                                                (202) 307-6546
                                                e-mail: stephen.t.lyons@usdoj.gov

1

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing UNITED STATES' NOTICE OF SUPPLEMENTAL AUTHORITY has this 10th$^{st}$ day of January, 2007, been electronically filed with the Clerk of the District Court using its CM/ECF system.

    /s/ stephen t. lyons
STEPHEN T. LYONS
Senior Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6546

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**ALBANY MEDICAL CENTER,**

                    **Plaintiff**

                    v.                     **1:04-CV-1399
(FJS/RFT)**

**UNITED STATES OF AMERICA,**

                    **Defendant.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **MCDERMOTT WILL & EMERY**<br>600 13th Street, NW<br>Washington, D.C. 20005 | **CHRISTOPHER KLIEFOTH, ESQ.**<br>**MARK H. CHURCHILL, ESQ.**<br>**SARAH E. HANCUR, ESQ.** |
| 50 Rockefeller Plaza<br>New York, New York 10020-1605<br>Attorneys for Plaintiff | **TERRY L. ROSS, ESQ.** |
| **UNITED STATES DEPARTMENT<br>OF JUSTICE – TAX DIVISION**<br>P.O. Box 55<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Attorneys for Defendant | **STEPHEN T. LYONS, ESQ.**<br>**ELIZABETH L. DAVIS, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff filed its complaint in this action on December 6, 2004, seeking to recover a refund of certain employment taxes it paid for its resident doctors ("residents") for the tax years of 1995 through 1999. As discovery commenced, the parties reached an impasse concerning disclosure of personal information about the residents that might be considered confidential

under the Family Educational Rights and Privacy Act ("FERPA") and/or the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"). Therefore, Magistrate Judge Treece issued a Confidentiality Order on May 9, 2006.

Currently before the Court are (1) the Government's motion for summary judgment on Plaintiff's claim on the basis that the Internal Revenue Code's ("IRC") "student exception" does not cover medical residents as a matter of law and (2) the Government's objections to the Confidentiality Order that Magistrate Judge Treece issued on May 9, 2006.

## II. BACKGROUND

Plaintiff Albany Medical Center is the administrative unit linking Albany Medical College and Albany Medical Center Hospital. Plaintiff has residency educational programs in approximately forty medical specialties in which resident doctors gain required medical training and experience under the supervision of full-time faculty, who are established medical professionals. Residents' activities include a substantial amount of clinical care for hospital patients, and Plaintiff provides them remuneration and benefits, ranging from approximately $32,000 to $35,000, depending on their progress within the program.

In all quarters during the period from 1995 to 1999, Plaintiff paid and withheld Federal Insurance Contribution Act ("FICA") taxes for its residents. In February 2002, Plaintiff filed Form 843, claiming a refund and abatement of these amounts, plus interest.[1] Since the Internal

---

[1] In context, Plaintiff's refund claim is one of approximately 7,000 similar claims that medical institutions have brought seeking more than $1.135 billion in FICA taxes paid and
(continued...)

Revenue Service did not respond to its claim within six months, Plaintiff filed this action seeking a total refund of $7,321,279.52.

### III. DISCUSSION

**A. Applicability of the student exception**

Under the Internal Revenue Code, wages earned for employment are subject to FICA taxes. *See* IRC §§ 3101(a)-(b), 3111(a)-(b). The Code defines "employment" as "any service, of whatever nature, performed . . . by an employee for the person employing him . . . ." IRC § 3121(b). However, services rendered for a "school, college, or university" by "a student who is enrolled and regularly attending classes at such school, college, or university" are not considered employment. IRC § 3121(b)(10). Therefore, services performed under the student exception and the money received therefrom are not subject to FICA taxes. Plaintiff bases its refund claim on this provision.

The Government asserts that medical residents are not included in the student exception as a matter of law. Its argument is based on the legislative history of the student exception and related provisions of the IRC. In response, Plaintiff contends that the Court should not consider legislative history because the student exception is unambiguous. Alternatively, Plaintiff argues that the legislative history shows that medical residents are eligible for the student exception and

---

[1](...continued)
withheld for medical residents, following *Minnesota v. Apfel*, 151 F.3d 742 (8th Cir. 1998). *See United States v. Mount Sinai Med. Ctr. of Fla., Inc.*, 353 F. Supp. 2d 1217, 1229 (S.D. Fla. 2005).

that case-by-case analysis is required.

Despite Plaintiff's arguments to the contrary, whether a medical resident qualifies as "a student who is enrolled and regularly attending classes at such school, college, or university" is not a question that is resolvable by resorting to the text of IRC § 3121 alone. Although it is clear that residencies have an educational component, it is equally clear that patient care in a hospital setting is a prominent concern. Therefore, it is appropriate to review the history behind the legislation. *See United States v. Donruss Co.*, 393 U.S. 297, 303 (1969) ("Since the language of the statute does not provide an answer to the question before us, we have examined in detail the relevant legislative history." (footnote omitted)). This examination is particularly necessary because "'[t]he true meaning of a single section of a statute in a setting as complex as that of the revenue acts, however precise its language, cannot be ascertained if it be considered apart from related sections, or if the mind be isolated from the history of the income tax legislation of which it is an integral part.'" *See Comm'r v. Engle*, 464 U.S. 206, 223 (1984) (quoting *Helvering v. Morgan's Inc.*, 293 U.S. 121, 126, 55 S.Ct. 60, 62, 79 L.Ed. 232 (1934)).

Moreover, in determining whether an employment relationship subject to FICA taxation exists, the court should abandon a limited construction of the statutory text in favor of an interpretation bearing in mind the purpose of the Social Security Act and its wide breadth of coverage. *See United States v. Silk*, 331 U.S. 704, 711-12 (1947) (footnotes omitted); *Soc. Sec. Bd. v. Nierotko*, 327 U.S. 358, 365 (1946). Courts are required to interpret federal social security legislation liberally, and they should resolve any doubts in favor of coverage rather than exclusion. *See Herbst v. Finch*, 473 F.2d 771, 775 (2d Cir. 1972) (quotation omitted). It is a "settled principle that exemptions from taxation are not to be implied; they must be

-4-

unambiguously proved." *United States v. Wells Fargo Bank*, 485 U.S. 351, 354 (1988) (citations omitted).

The legislative history indicates that Congress never intended medical residents to qualify for the student exception. In 1935, the original Social Security Act was signed into law. *See United States v. Mount Sinai Med. Ctr. of Fla., Inc.*, 353 F. Supp. 2d 1217, 1223 (S.D. Fla. 2005). As originally enacted, social security taxes were imposed on "wages," which were defined as "all remuneration for employment." Social Security Act of 1935, ch. 531, 49 Stat. 639, § 811(a). In turn, "employment" was defined as "any service, of whatever nature, performed within the United States by an employee for his employer . . . ." *Id.* § 811(b). However, the statute contained eight broad exceptions, including agricultural labor, domestic service, casual labor, and service for certain nonprofit and governmental organizations. *See id.* There were no exceptions for students, interns, or medical residents.

Before the Government paid out any benefits, Congress amended the Social Security Act in 1939. *See* Social Security Amendments of 1939, H.R. Rep. No. 76-728 (1939), *reprinted in* 1939-2 C.B. 538, 540. The 1939 amendments did not substantively change the definition of the term "employment," but they did establish the student and medical intern exceptions by exempting the following:

> (10)(A) Service performed in any calendar quarter in the employ of any organization exempt from income tax . . . **if . . . (iii) such service is performed by a student who is enrolled and regularly attending classes at a school, college, or university**. [53 Stat. 1385, § 1426(b)(10)(A) of the Internal Revenue Code of 1939] . . . .
>
> (10)(E) Service performed in any calendar quarter in the employ of

-5-

> a school, college, or university, not exempt from income tax under section 101, **if such service is performed by a student who is enrolled and is regularly attending classes at such school, college, or university**, and the remuneration for such service does not exceed $45 (exclusive of room, board, and tuition) [*Id.* at § 1426(b)(10)(E)] . . . .
>
> (13) . . . **[S]ervice performed as an intern in the employ of a hospital by an individual who has completed a four years' course in a medical school** chartered or approved pursuant to State law. [*Id.* at § 1426(b)(13)].

*See Mount Sinai*, 353 F. Supp. 2d at 1223 (footnote omitted) (emphasis added). At that time, there was a distinct difference between interns and residents, and Congress clarified that the intern exception did not apply to residents. The House of Representatives stated that the exception covered "'service performed as an intern (as distinguished from a resident doctor) . . . .'"[2] *Id.* (quoting H.R. Rep. No. 76-728 at 550-51). Self-employed physicians were also generally exempted. *See id.* at 1224 (citation omitted).

In 1950, Congress eliminated the quarterly limit on payments to an employee/student of a non-exempt school, college, or university and consolidated the separate student exceptions for exempt and nonexempt entities. *See id.* (citing Social Security Amendments of 1950, Pub. L. No. 81-734, § 104(a), 64 Stat. 477, 497, 531 (1950)). Thus, the student exception became identical to today's version by excluding from the term "employment"

> [s]ervice performed in the employ of a school, college, or university if such service is performed by a student who is enrolled

---

[2] "Interns" were medical school graduates in their first year of residency while "residents" had already completed their initial year. However, the distinction between interns and residents ceased to exist during the 1970s. *See United States v. Mayo Found. for Med. Educ. & Research*, 282 F. Supp. 2d 997, 1007 (D. Minn. 2003).

-6-

>and is regularly attending classes at such school, college, or
>university.

*Id.* (citations omitted).

During the period from 1939 to 1964, some medical residents argued that they were exempt from the social security tax under the intern exception. *See id.* at 1225. In *St. Luke's Hosp. Assoc. v. United States*, 333 F.2d 157 (6th Cir. 1964), the Sixth Circuit adjudicated the residents' challenge to the taxation. The Sixth Circuit considered the legislative history and recognized the distinction between interns and residents that existed at the time of the 1939 amendments. *See St. Luke's*, 333 F.2d at 160-62; *Mount Sinai*, 353 F. Supp. 2d at 1225. However, it concluded that Congress was familiar with the distinction between interns and residents and declined to apply the intern exception to residents.[3] *See St. Luke's* at 163-64; *Mount Sinai*, 353 F. Supp. 2d at 1225. The *St. Luke's* court concluded that legislative action would be required to expand the intern exception to cover medical residents. *See id.*; *Mount Sinai*, 353 F. Supp. 2d at 1226.

In 1965, Congress responded to *St. Luke's* but did not expand the intern exception to cover residents. *See Mount Sinai*, 353 F. Supp. 2d at 1226. Instead, it completely eliminated the intern exception and the exemption for self-employed physicians. *See id.* The House of Representatives explained its intent, referring to interns as "young doctors," rather than students:

>Coverage would also be extended to services performed by medical

---

[3] The Sixth Circuit also considered a distinction in terminology between residents-in-training and resident-doctors (who were part of the regular hospital staff) and determined that Congress intended Social Security coverage for both. *See St. Luke's*, 333 F.2d at 163-64; *Mount Sinai*, 353 F. Supp. 2d at 1225.

-7-

> and dental interns. The coverage of services as an intern would give young doctors an earlier start in building up social security protection and would help many of them to become insured under the program at a time when they need the family survivor and disability protection it provides. This protection is important for doctors of medicine who, like members of other professions, in the early years of their practice, may not otherwise have the means to provide adequate survivorship and disability protection for themselves and their families.

*See id.* (quoting H.R. Rep. No. 89-213, 89th Cong. 1st Sess. 95, 1965-2 C.B. 733, 735). The Senate similarly explained that "[c]overage would also be extended to services performed by medical and dental interns. They would be covered on the same basis as other employees working for the same employers." *See* Social Security Amendments of 1965, S. Rep. No. 89-404 (1965), *reprinted in* 1965-2 C.B. 758, 759 (1965). In clarifying its intent in simultaneously ending the exception for self-employed physicians, Congress indicated a "general view that coverage should be as universal as possible." *See Mount Sinai*, 353 F. Supp. 2d at 1226 (quoting H.R. Rep. No. 89-213, 1965-2 C.B. at 734-35).

The Court reaches two conclusions based upon this legislative history. First, it is clear that, as Congress made the relevant amendments, it did so with the intent to provide nearly universal coverage with limited exceptions. Therefore, when Congress ended the intern exception in 1965, it is improbable that it *sub silentio* intended interns and residents to qualify instead for the student exception. To the contrary, Congress explicitly considered the need of "young doctors" to start building up survivor and disability benefits. Second, if residents could be considered students for Social Security taxation purposes today, then the student exception would have been broad enough to cover interns from 1939 to 1965. However, Congress deemed

it necessary to enact a specific exception for interns. Consequently, if residents and interns qualified for the broad student exception, the specific intern exception would have been superfluous. Whenever possible, courts should construe a statute so as to give effect to each provision and not render parts superfluous. *See United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (citations omitted).[4] Therefore, the proper conclusion is that residents and interns never qualified for the student exception.

Based on the legislative history and these conclusions, the Court finds that "[m]edical residents had always been covered by Social Security" in 1965 when Congress ended the intern exception and self-employed physician exemption. *See Mount Sinai*, 353 F. Supp. 2d at 1227.[5] Moreover, the Court concludes that, as a matter of law, medical residents continue to be subject

---

[4] Plaintiff cites legislative history that "[t]he effect of [the 1965] amendment is to extend coverage under the Federal Insurance Contributions Act to such interns unless their services are excluded under provisions other than section 3121(b)(13)." *See* Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment at 12 (citing H.R. Rep. 89-213, 89th Cong. 1st Sess. 216, 1965-2 C.B. 747). It argues that this statement means that interns were eligible for the student exception. However, if Plaintiff's interpretation of this legislative history were correct, the intern exception would have been entirely unnecessary. Upon review, Plaintiff failed to cite the complete passage, which clarifies that interns could still qualify for one of the other, more general, exceptions, such as employment for certain exempt organizations. *See* H.R. Rep. No. 89-213, 1965-2 C.B. at 747.

[5] The Court finds the cases that Plaintiff cites either distinguishable or unpersuasive. *Minnesota v. Apfel*, 151 F.3d 742 (8th Cir. 1998), deals with employees of a state university hospital and holds that they may be considered "students" under a Social Security agreement between the state and the Commissioner of Social Security. As the *Mount Sinai* court noted about *Apfel*, the Eighth Circuit considered the student exception of 42 U.S.C. § 410(a)(10), which the parties do not rely on here, and its discussion of this provision is dicta because the court had already resolved the dispute before it on other grounds. *See Apfel*, 151 F.3d at 747-48; *Mount Sinai*, 353 F. Supp. 2d at 1229. Plaintiff also relies on *Minnesota v. Chater*, which was the district court case being reviewed in *Apfel*. Finally, Plaintiff cites *United States v. Mayo Found. for Med. Educ. & Research*, 282 F. Supp. 2d 997, 1007 (D. Minn. 2003), which relies on *Apfel* and *Chater* and contains little independent analysis.

to FICA taxes today because they do not qualify for the student exception of IRC § 3121(b)(10).[6]

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's claims.

**B.    Objections to the Confidentiality Order**

Since the Court has granted Defendant's motion for summary judgment on Plaintiff's claims, the Government's objections to Magistrate Judge Treece's confidentiality order are **DENIED AS MOOT**.

### IV. CONCLUSION

Accordingly, after reviewing the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that Defendant's objections to Magistrate Judge Treece's Confidentiality Order are **DENIED AS MOOT**; and the Court further

**ORDERS** that the Clerk of the Court enter judgment and close this case.

---

[6] The United States District Court for the Eastern District of Michigan recently reached the same conclusion. *See United States v. Detroit Med. Ctr.*, No. 05-71722, 2006 WL 3497312 (E.D. Mich. Dec. 1, 2006).

**IT IS SO ORDERED.**


Dated:   January 10. 2007
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge